EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Autoridad de Acueductos y Alcantarillados<br><br>    Recurrida<br><br>        v.<br><br>Unión de Abogados de la Autoridad de Acueductos y Alcantarillados<br><br>    Peticionaria | Certiorari<br><br>2002 TSPR 149<br><br>158 DPR _____ |

Número del Caso: CC-2001-452


Fecha: 11 de diciembre de 2002

Tribunal de Circuito de Apelaciones:
                    Circuito Regional I

Juez Ponente:
                    Hon. Héctor Urgell Cuebas

Abogados de la Parte Peticionaria:
                    Lcda. Gloria Elis Flores Andino
                    Lcdo. Richard V. Pereira Gutiérrez

Abogado de la Parte Recurrida:
                    Lcdo. Rafael J. Vázquez González


Materia: Revisión de Decisión Administrativa procedente de la Junta de Relaciones del Trabajo de Puerto Rico


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Autoridad de Acueductos y
Alcantarillados

    Recurrida

        vs.             CC-2001-452     CERTIORARI

Unión de Abogados de la
Autoridad de Acueductos y
Alcantarillados

    Peticionaria

Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LÓPEZ

**San Juan, Puerto Rico, a 11 de diciembre de 2002**

Hoy nos corresponde resolver si, a la luz de las disposiciones de la Ley de Relaciones del Trabajo de Puerto Rico[1], un grupo de abogados que desempeñan diversas funciones en varias divisiones de la Autoridad de Acueductos y Alcantarillados pueden integrar una unidad apropiada para negociar colectivamente. Veamos los hechos que dieron margen a la presente controversia.

**I**

El 9 de octubre de 1998, la Unión de Abogados de la Autoridad de Acueductos y Alcantarillados

---

[1] Ley Núm. 130 de 8 de mayo de 1945, según enmendada, 29 L.P.R.A. secs. 61 *et seq*.

(en lo sucesivo, la Unión) presentó, ante la Junta de Relaciones del Trabajo (la Junta), un documento intitulado "Petición para Investigación y Certificación de Representante." Mediante el mismo, la Unión indicaba su intención de que se le certificara como representante exclusivo de los abogados que la Autoridad de Acueductos y Alcantarillados tenía asignados a las siguientes divisiones u oficinas: Oficina de Adquisición de Terrenos, División Legal, División Legal Ambiental, Oficina de Contratación, Relaciones Industriales y la Oficina de Servicio al Cliente. La Autoridad, por su parte y como patrono de los referidos abogados, se opuso a la solicitud interpuesta por la Unión. Luego de que la Junta emitiera orden a tales efectos, tanto la Unión como la Autoridad sometieron sus posturas por escrito respecto a la petición interpuesta por la primera.

Así las cosas, la Junta ordenó la celebración de audiencias públicas. Llegada la fecha para la celebración de las mismas, el oficial examinador recibió los testimonios de diecisiete personas. Habiendo, tanto la Autoridad como la Unión, presentado sus respectivos memorandos de derecho, la Junta emitió su decisión mediante la cual certificó como unidad apropiada a los abogados en cuestión. Asimismo, la Junta ordenó la celebración de las elecciones correspondientes para que se pudiera llevar a cabo el proceso de negociación colectiva.

**Inconforme con dicha determinación, la Autoridad acudió ante el Tribunal de Circuito de Apelaciones mediante recurso**

de revisión.[2] Planteó, ante el referido foro, que la Junta había errado al concluir que los abogados de la Autoridad podían constituirse en una unidad apropiada toda vez que ello contravenía las disposiciones de la Ley de Relaciones del Trabajo así como su jurisprudencia interpretativa.

El foro apelativo intermedio revocó la resolución recurrida. Resolvió, en síntesis, que en tanto los abogados de la Autoridad satisfacían a cabalidad la definición de "empleados gerenciales", no tenían derecho a unionarse. Tanto la Unión como la Junta interpusieron sendas mociones de reconsideración las cuales fueron declaradas sin lugar.

De dicha determinación adversa, la Unión recurrió ante este Tribunal --vía certiorari-- sosteniendo que erró el Honorable Tribunal de Circuito de Apelaciones:

> ...al concluir que tiene jurisdicción para revisar una decisión y orden de la Junta de Relaciones del Trabajo de Puerto Rico por medio de un recurso de revisión judicial.

> ...en la apreciación de la prueba al sustituir el criterio de la Junta de Relaciones del Trabajo de Puerto Rico por el propio y modificar las determinaciones de hechos.

> ...en la apreciación de la prueba al concluir que la Junta de Relaciones del Trabajo de Puerto Rico cometió error de derecho al declarar a los Abogados de la AAA "empleados" sustituyéndolo a su vez, por su criterio propio al determinar que son "empleados

---

[2] Algún tiempo después de haber radicado el recurso de revisión, la Autoridad compareció ante dicho foro mediante "Moción Urgente en Auxilio de jurisdicción." En la misma, informó al tribunal apelativo que la Junta estaba llevando a cabo las gestiones relativas a la coordinación del proceso eleccionario por lo cual solicitó la paralización de los mencionados procedimientos. Dicha solicitud fue acogida por el referido foro, paralizándose los procedimientos en la Junta.

gerenciales", por ende sin derecho a la negociación colectiva.

El 20 de julio de 2001, <u>expedimos</u> el auto solicitado. Estando en posición de resolver el mismo, procedemos a así hacerlo.


## II

Es norma conocida que las cuestiones relativas a la jurisdicción de los tribunales para atender los recursos ante su consideración constituyen materia privilegiada. Como celosos guardianes de nuestra jurisdicción, los tribunales venimos obligados a considerar dichos asuntos prioritariamente incluso en ausencia de planteamiento a tales efectos. Véanse: <u>Padró</u> v. <u>Vidal</u>, res. el 14 de febrero de 2001, 2001 T.S.P.R. 15. <u>Vázquez</u> v. <u>A.R.P.E.</u>, 128 D.P.R. 153 (1991); <u>Martínez</u> v. <u>Junta de Planificación</u>, 109 D.P.R. 839 (1980).

Como primer señalamiento de error, la Unión nos plantea que el Tribunal de Circuito de Apelaciones no tenía jurisdicción para revisar la decisión emitida por la Junta pues, tratándose de una determinación concerniente a un procedimiento ordinario de representación, sólo podía revisarse por la vía colateral mediante una controversia sobre práctica ilícita. Veamos si le asiste la razón.

De una lectura de los Incisos (3) y (4) del Artículo 5 de la Ley de Relaciones del Trabajo, ante, y del Artículo 9 de la referida Ley, se desprende que la intervención judicial con respecto a las decisiones que emite la Junta se da en virtud

de la facultad revisora del tribunal y que ésta, a su vez, sólo puede ejercitarse una vez la Junta ha emitido una decisión final sobre una práctica ilícita de trabajo. De modo que, las decisiones y órdenes dimanantes de casos de representación, sólo son revisables mediante un ataque colateral imbricado en una decisión relativa a alguna práctica ilícita. J.R.T. V. A.M.A., 119 D.P.R. 94 (1987).

El referido esquema de revisión, el cual hemos incorporado de la jurisdicción federal a nuestro entorno jurídico, es un mecanismo mediante el cual se procura promover la paz industrial evitando que los patronos acudan indiscriminadamente a los tribunales en solicitud de revisión de las órdenes emitidas por la Junta con el fin único de causar dilaciones en el procedimiento eleccionario. Al evitar este tipo de práctica dilatoria por parte del patrono, se protege la posición de los trabajadores en el transcurso del proceso de negociación. En vista de ello, este Tribunal dejó establecido, en U.P.R. v. Asoc. De Profs. Universitarios, 136 D.P.R. 335, 349 (1994), que:

> ... de ordinario la revisión judicial de una orden de la Junta, en casos corrientes de representación, procede únicamente por la vía colateral, como parte de una determinación de la Junta sobre práctica ilícita de trabajo.

De todo lo previamente expuesto se puede colegir que la Junta de Relaciones del Trabajo de Puerto Rico tiene jurisdicción exclusiva para determinar, en primera instancia, quiénes pueden integrar una unidad apropiada para fines de

negociar colectivamente. Ahora bien, es preciso aclarar que la conocida limitación en nada impide que este Tribunal ejerza su facultad, clara e irrestricta, para decidir, de manera exclusiva, determinadas controversias incluso cuando ello implique revisar decretos u órdenes emitidos por la Junta en una etapa previa a un procedimiento de práctica ilícita. U.P.R. v. Asoc. Profs. Universitarios, ante.

Claro está, para que esa intervención previa sea posible, es necesario que se trate de una controversia que involucre circunstancias muy particulares. Entiéndase, por ejemplo, aquéllas que afectan derechos de rango constitucional. U.P.R. v. Asoc. Profs. Universitarios, ante; Silva v. Hernández Agosto, 118 D.P.R 45 (1986). Asimismo, se justifica la intervención del tribunal en una etapa previa cuando la controversia trabada no sólo envuelve cuestiones jurídicas noveles sino que entraña asuntos de gran trascendencia al interés público. U.P.R. v. Asoc. Profs. Universitarios, ante.

Por otro lado, la intervención también procede si el asunto cuya revisión se solicita es determinativo respecto del derecho que invocan quienes solicitan se les certifique como una unidad apropiada con el fin de proceder a la negociación colectiva. Dicho en otros términos, se permite la intervención, por la vía de la excepción, cuando la controversia gira más bien sobre la facultad de la Junta para atender el reclamo y no meramente sobre la composición de una unidad apropiada.

**Así lo determinó este Tribunal en U.P.R. v. Asoc. de Profs. Universitarios, ante. En el referido caso, nos enfrentamos a una situación de carácter excepcional: la U.P.R., como patrono, alegaba que la resolución de la controversia a su favor (si los profesores eran o no empleados gerenciales y si podían organizarse y negociar colectivamente) dispondría del caso en su totalidad toda vez que la unidad propuesta por la Junta estaba compuesta, enteramente, por empleados gerenciales. A tales efectos, este Tribunal expreso lo siguiente[3]:**

> De tener razón la U.P.R., la Junta no tendría facultad para dictar una orden de elecciones en relación con una unidad apropiada compuesta por profesores, puesto que ninguno de los componentes de la unidad propuesta tendría el derecho a organizarse. Este no es el caso en que el patrono impugna una porción de los empleados en la unidad apropiada. En casos en los cuales la unidad propuesta por la Junta contiene una porción significativa de empleados, que en efecto tienen derecho a unionarse, podría existir una justificación para aplicar la interpretación federal de las disposiciones aludidas y fomentar así una negociación más equitativa y pacífica, libre de tácticas dilatorias por parte del patrono. Sin embargo, en casos como éste, en el cual el peticionario alega que la unidad propuesta está compuesta en su totalidad de "empleados gerenciales" sin derecho a unionarse, *la controversia gira propiamente sobre la facultad de la Junta y no sobre la composición de la unidad apropiada como tal*. De ésta ser resuelta a favor del peticionario, dispondría del caso de manera final. En esta situación, la aplicación del esquema federal obligaría a las partes a acudir ante nos por el camino tortuoso y dispendioso de revisión de un procedimiento de práctica ilícita, sin que ello abone de modo alguno al resultado final del caso. (Énfasis nuestro.)

Resulta evidente, pues, que tratándose de un caso muy distinto de aquellos en los que sólo nos enfrentamos a

---

[3] *Ibid*, a la pag. 354.

circunstancias típicas de casos ordinarios de representación, en el presente caso tenemos jurisdicción para ejercer nuestra función revisora. Nótese que, tal como sucedió en U.P.R. v. Asoc. de Profs. Universitarios , ante, para resolver la controversia ante nuestra consideración, la normativa sobre "empleado gerencial" así como la de "empleado confidencial" es determinativa no sólo del reclamo entablado por la Unión, sino que      --además-- lo es asimismo de la jurisdicción de la Junta para considerar el asunto que nos ha traído hasta aquí. Dicho de otro modo, es el contexto particular que tenemos ante nos lo que nos permite distanciarnos del esquema de revisión que impera bajo el estado de derecho vigente, que sólo concibe la revisión judicial de las decisiones u órdenes de la Junta cuando se está ante una controversia de práctica ilícita.

Así pues, ausente ante nuestra consideración la clase de empleados a quienes con mayor probabilidad les asista el derecho a unionarse, evaluamos, más bien, el reclamo de un grupo de abogados que son categorizados por su patrono como empleados gerenciales y confidenciales. En vista de lo anterior, nuestra intervención en esta etapa no acarrea el riesgo de fomentar prácticas dilatorias que obren en perjuicio de los derechos que cobijan a los obreros, lo que con toda probabilidad sucedería dentro de un contexto industrial tradicional. Expuesto lo anterior, concluimos que el primer señalamiento de error no se cometió.

III

Aclarado el aspecto de la jurisdicción que ostenta este Tribunal para intervenir, por excepción, en este caso, pasamos a considerar los demás señalamientos de error. En vista de que el segundo y tercer señalamiento de error atienden el asunto de la incorrecta apreciación de la prueba por parte del Tribunal de Circuito de Apelaciones, habremos de discutirlos conjuntamente.

En síntesis, la Unión plantea que el foro apelativo intermedio cometió error al sustituir el criterio de la Junta por el propio para así concluir que los abogados de la Autoridad son empleados gerenciales y que --por lo tanto-- no tienen derecho a negociar colectivamente. Veamos si le asiste la razón.

El derecho de los trabajadores a organizarse, negociar colectivamente y realizar otras actividades de naturaleza concertada se encuentra estatuido en la Ley de Relaciones del Trabajo de Puerto Rico, ante. Este derecho es, asimismo, de rango constitucional,[4] por lo que debe ser interpretado liberalmente, es decir, a favor de las protecciones que de él emanan. J.R.T. v. Asoc. C. Playa Azul I, 117 D.P.R. 20 (1986). Cabe recordar, sin embargo, que dicha tarea interpretativa no puede darse en plena abstracción de los demás derechos e intereses involucrados sino que tiene que darse en función de todos ellos. En ese sentido, hemos reconocido, pues, que el ejercicio de dicha tarea tiene que estar enmarcada "dentro del

cuadro general de la sociedad con arreglo a las limitaciones inherentes a la vida común". S.I.U. de P.R. v. Otis Elevator Co., 105 D.P.R. 832, 842 (1977).

Como parte de las consabidas limitaciones impuestas por nuestro ordenamiento al pleno disfrute de los derechos en cuestión, hemos dejado claro que para que a una persona le asista el derecho a unionarse y negociar colectivamente, debe de enmarcar dentro de la definición de *empleado* según esbozada tanto en la Ley de Relaciones del Trabajo, supra, como en nuestra Constitución y su jurisprudencia interpretativa. Con respecto a la primera, ésta excluye expresamente de la referida definición a los individuos que trabajan en el servicio doméstico, a quienes son empleados de sus padres o cónyuges y a quienes desempeñan funciones propias de un ejecutivo o un supervisor. [5] Encontramos, asimismo, otras excepciones establecidas tanto por interpretación administrativa como judicial, a saber: el contratista independiente, el empleado confidencial, el gerencial y aquél que puede presentar conflictos de intereses. Por la pertinencia al caso de marras, nos limitaremos a examinar si los abogados de la Autoridad pueden ser considerados como empleados gerenciales y/o confidenciales, de suerte que estén excluidos de los derechos que confiere la Ley de Relaciones del Trabajo, supra, en lo que respecta al derecho de organizarse y negociar colectivamente.

---

[4] Véase: Art. II, Sec. 17, Const. E.L.A.
[5] 29 L.P.R.A. sec. 63(3).

En cuanto a la normativa de empleado gerencial, se ha establecido que son: (1) aquellos cuyos intereses están vinculados con los de la gerencia porque comparten una "comunidad de intereses", y (2) aquellos que formulan o efectúan la política gerencial. U.P.R. v. Asoc., ante. El Tribunal Supremo Federal, en el conocido caso NLRB v. Bell Aerospace Co., 416 U.S. 267 (1974), delimitó dicha categoría de empleados como aquellos que, al momento de llevar a cabo o recomendar acciones discrecionales que controlen o implanten la política patronal de manera efectiva, se alinean con la gerencia.[6]

La Junta de Relaciones del Trabajo de Puerto Rico, dicho sea de paso, ha acogido la exclusión de empleados confidenciales que ha sido desarrollada en la jurisdicción federal;[7] esto es, la Junta ha seguido la misma en sus procesos de determinación de una unidad apropiada.[8]

_____

[6] En J.R.T. v. Corp. del Conserv. de Música P.R., 140 D.P.R. 407 (1996), hicimos referencia a los siguientes importantes criterios, tomados éstos de varias decisiones emitidas por la Junta respecto a la normativa de empleado gerencial. Apuntamos que es el tipo de empleado que: (1) tiene ideas, intereses y actitudes alineadas con las de la gerencia; (2) formula o determina la política y las normas administrativas y gerenciales del patrono en el curso de su trabajo, y (3) ejercita un alto grado de discreción para realizar su labor sin que tenga que conformarse a unas normas predeterminadas por el patrono. En síntesis, estos elementos son: identidad, autoridad y discreción.

[7] Véase: *Fábrica de Muebles Dimas*, Dec. de la J.R.T. Núm. 134 (1955); *Autoridad de las Fuentes Fluviales*, Dec. de la J.R.T. Núm. 465 (1967).

[8] Así lo indicamos, al resumir la postura de la Junta a esos efectos, en Administración de Terrenos v. Unión Independiente, (Sentencia) res. el 16 de julio de 1999, 99 T.S.P.R. 123; expresiones que, por estar contenidas en una Sentencia, no

Habiendo expuesto sucintamente la normativa relativa a las exclusiones pertinentes establecidas en nuestro ordenamiento, resta aplicarlas al caso ante nuestra consideración. Para ello, es necesario evaluar la naturaleza del trabajo de los abogados de la Autoridad, los cuales se encuentran destacados en los diferentes departamentos de la referida instrumentalidad del Gobierno. [9] De entrada,

---

establecen jurisprudencia pero que reseñamos por la corrección jurídica de su razonamiento. En dicha Sentencia expresamos que:

> El término "confidencial" únicamente incluye a aquellos empleados que actúan y asisten en una capacidad confidencial a personas que desempeñan funciones de gerencia en el campo de las relaciones obrero-patronales. La doctrina se refiere a aquel tipo de trabajo que está relacionado con la información y conocimiento sobre las relaciones obreras y la negociación colectiva. Cuando el empleado tiene que manejar documentos y participa en reuniones y gestiones de las cuales se desprende la política laboral de la empresa, efectúa el trabajo confidencial que lo excluye de la definición de "empleado". Esta definición fue ampliada en [sic] de manera que incluye a ciertas personas que si bien, no son ejecutivos ni supervisores, en el conjunto de las tareas que realizan, atienden asuntos confidenciales relativos a asuntos obrero-patronales, o están en una relación confidencial con las personas que formulan o establecen las normas, directrices o la política obrero-patronal de una empresa, o que como parte de sus funciones tienen acceso y/o conocimiento de la política a seguir por la gerencia en cuanto a la manera de formular y administrar las relaciones obrero-patronales. Dentro de esta categoría se encuentran también los empleados que aunque no asisten personal que realiza funciones empresariales en el curso de las relaciones obrero-patronales, sí tienen regularmente acceso a información confidencial relacionada con posibles cambios futuros que pueden resultar de las negociaciones colectivas.

corresponde examinar las tareas que realizan los abogados de la Autoridad según surge tanto de las determinaciones de la Junta como de las constancias de autos.[10]

De conformidad con lo determinado por la Junta de Relaciones del Trabajo tras la celebración de las correspondientes audiencias, los abogados de la Autoridad realizan, en el desempeño de sus funciones, las siguientes tareas:

A.    Oficina de Adquisición de Terrenos

La División de Adquisición de Terrenos cuenta con tres abogados los cuales están bajo la supervisión de un agrimensor. Como parte de sus tareas, los abogados de dicha división autorizan documentos notariales de variada naturaleza, a saber: redactan escrituras y otros documentos notariales necesarios para las diferentes transacciones de terrenos en desuso pertenecientes a la Autoridad. Respecto a los procedimientos y casos de expropiaciones, es de su incumbencia la evaluación de los mismos y la redacción de las distintas mociones y escritos que son radicados ante los tribunales, corroborando que la documentación pertinente a dichos casos esté completa y en orden.

---

[9] No se cuestiona la jurisdicción de la Junta sobre la Autoridad de Acueductos y Alcantarillados. Para fines de la Ley de Relaciones del Trabajo y de nuestra Constitución, esta instrumentalidad gubernamental funciona como una corporación privada por lo que sus empleados, en términos generales, pueden organizarse y negociar colectivamente. Así fue resuelto en A.A.A. v. Unión de Empleados de la A.A.A., 105 D.P.R. 437 (1972).

[10] En el expediente obra la transcripción parcial de los testimonios vertidos en las mencionadas audiencias.

Con respecto a las transacciones de terrenos, una vez reciben el expediente que contiene los acuerdos del negocio, redactan un proyecto de escritura y verifican que se cumpla con todas las formalidades que tanto la Ley Notarial como la Ley Hipotecaria establecen. La decisión de adquirir el terreno recae en otras personas. Tienen una secretaria asignada para que les asista en el trabajo de oficina.

B.    División Legal:

Los abogados de esta división representan a la Autoridad en los casos que se les asignan, los cuales básicamente involucran controversias de daños y perjuicios, derecho notarial y administrativo. Respecto al acceso de dichos abogados a documentos confidenciales, existe controversia. Algunos sólo tienen contacto con documentos de carácter público pero otros señalan que advienen en contacto con información de naturaleza confidencial.

Los abogados de esta oficina ofrecen asesoría, aunque, según la Junta, no establecen política pública. Responden a las consultas que le hacen los directores regionales, y asesoran a éstos, en torno a interpretaciones de contratos o cualquier otra duda de carácter legal surgida. Ofrecen opiniones legales sobre variados asuntos, lo cual puede incluir el oponerse o favorecer determinados proyectos de ley. Cuando está ausente el Asesor Jurídico, cualquier abogado de la división legal puede fungir como interino.

C.    División Legal Ambiental:

Esta división está compuesta por tres abogados que trabajan bajo la supervisión del Director Técnico y de Cumplimiento de la Compañía. Uno de los abogados ejerce interinamente <u>funciones de supervisión</u> respecto a las secretarias de la división. Como parte de las funciones que desempeñan estos abogados, <u>está la de interpretar, aplicar y defender los reglamentos ante los tribunales de ello ser necesario</u>. Atienden casos ante los tribunales sobre asuntos ambientales, a saber: pre-tratamiento, sobrecarga y recobro. Representan a la Autoridad ante el Departamento de Salud de Puerto Rico y la Environmental Protection Agency (E.P.A.).

Los abogados de esta división proponen recomendaciones, pero carecen de potestad para transigir sus casos; éstas tienen que ser aprobadas por el Director. De otra parte, no tienen que atender, como parte de sus labores, asuntos de índole obrero-patronal por lo que supuestamente desconocen información relativa a la negociación colectiva o política laboral de la agencia.

No obstante lo anterior, según el testimonio vertido por uno de los testigos, <u>los abogados de esta división advienen en conocimiento de documentos internos de la agencia tales como los estados financieros de la Agencia y de otras industrias involucradas, así como de los datos sobre las plantas de la Autoridad</u>.

D.   Oficina de Contratación:

El abogado que trabaja en esta oficina tiene un nombramiento de gerencial de carrera. Esta oficina está

adscrita al Departamento de Administración de Contratos de Construcción. Este abogado tiene a su cargo todas las funciones relativas a la contratación de servicios profesionales así como la contratación relacionada a las subastas públicas. Realiza trabajo notarial así como <u>asesoramiento legal relacionado a obligaciones y contratos</u>. Sus funciones no se relacionan al área obrero-patronal, ni afectan el status de los demás empleados. Sostiene que no establece política pública ya que su labor se limita a las instrucciones establecidas en unos reglamentos y un procedimiento.

E.    Relaciones Industriales:

La labor de <u>asesoramiento</u> de los abogados de esta división se circunscribe al Director de Relaciones Industriales. No han participado en la preparación de reglamentos que expresen política pública de la Autoridad ni en negociaciones obrero-patronales. <u>No obstante lo anterior, postulan en defensa de la Agencia ante los comités de querella de la Unión Independiente Auténtica (UIA), de la Hermandad Independiente de Empleados Profesionales de la A.A.A. (HIEPA), la Junta de Relaciones de Trabajo, el Negociado de Conciliación y Arbitraje y el Comité de Apelaciones Gerencial</u>. A pesar de que no tienen la última palabra a la hora de transigir los casos <u>ciertamente representan a la Autoridad, como patrono, en dichos foros</u>.

F. Oficina de Servicio al Cliente:

La abogada asignada a esa oficina trabaja bajo la supervisión del Director Adjunto del Área de Servicio al Cliente y Sistemas de Información. Esa abogada representa legalmente a la Autoridad en toda demanda que se radique relativa a los daños y perjuicios que surjan como resultado de los cortes de servicio indebidos y cobros de dinero. Asimismo, asesora a los gerentes de las oficinas comerciales así como a sus empleados sobre la aplicabilidad de estatutos y/o reglamentos relacionados a las facturas de agua; asesora a su supervisor en aquellas dudas relativas a los estatutos concernientes a la Agencia. No tiene autoridad para transigir casos; pero sí emite recomendaciones. No recibe, como tampoco reciben los demás abogados, compensación por horas extra trabajadas. No tiene autoridad para afectar el status de empleo de los demás compañeros de trabajo y, alegadamente, no tiene contacto con información confidencial en materia de relaciones de personal ni asiste a la gerencia en torno a la negociación colectiva. No asiste a reuniones donde se discuta política pública.

G. Área de Operaciones:

La abogada de esta oficina asume la representación legal de los casos que se le asignen relacionados al área operacional; desempeña labores notariales con respecto a nombramientos dentro de la autoridad. La Junta reconoce que si bien existe discrepancia respecto a la discreción que tiene esta empleada, ella, por la naturaleza de su profesión, tiene

un grado de discreción en el manejo de sus casos así como lo tienen todos los demás abogados.

IV

A base de las propias determinaciones de la Junta sobre la naturaleza de las funciones de los abogados que laboran en los diferentes departamentos de la Autoridad, forzoso resulta concluir que éstos, contrario a lo que la Junta determinó, no tienen derecho a organizarse y negociar colectivamente. Una evaluación justa y ponderada del expediente en su totalidad refleja que el resultado al que llegó el referido ente administrativo no es correcto en derecho. Por lo tanto, no podemos refrendarlo.

Sabido es que, de ordinario, los tribunales conferimos deferencia tanto a las determinaciones de hecho que emiten las agencias administrativas como a las interpretaciones que de las leyes cuya administración les ha sido encomendada por el legislador efectúan las mismas en los procedimientos adjudicativos que llevan a cabo. San Antonio Maritime v. Puerto Rican Cement Co., res. el 16 de febrero de 2001, 2001 T.S.P.R. 16. No obstante lo anterior, los tribunales no estamos llamados a imprimir un sello de corrección, so pretexto de la deferencia, para avalar situaciones en que la interpretación efectuada resulta contraria a derecho. Calderón et al v. Adm. De los Sistemas de Retiro, 129 D.P.R. 1020 (1992).

**Contrario a lo resuelto por la Junta, somos del criterio que las tareas que realizan los abogados de la Autoridad no**

**son, como aparentemente se pretende dejar ver, labores artesanales. <u>Las funciones que éstos realizan, más bien, son las funciones propias del ejercicio de la profesión y --por cierto-- de suma importancia y trascendencia para la buena marcha de dicha entidad corporativa</u>.**

En resumidas cuentas, los abogados de la autoridad son, en esencia, consultores o asesores jurídicos de su patrono, que es, a su vez, su cliente. Asimismo, representan a la Autoridad en distintos foros --judiciales o administrativos-- en los cuales inevitablemente tienen que defender los intereses de su cliente. En múltiples ocasiones, dicho sea de paso, han tenido que representar a la Autoridad ante foros administrativos los cuales justamente atienden asuntos de naturaleza laboral.[11] <u>Naturalmente, en el curso de dicha representación el abogado, tal cual sucede siempre que se decide representar a un cliente, tiene que ubicarse del lado que favorezca los intereses de su representado.</u>

De otra parte, a pesar de que estos abogados no tienen un grado de discreción irrestricta en el manejo de sus casos, no es necesario que así sea para que puedan ser conceptuados, en primer término, como empleados gerenciales. "Empleado gerencial" es también aquél cuya discreción está delimitada por parámetros que el patrono establece dentro de su política gerencial. <u>N.L.R.B.</u>  V.  <u>Bell Aerospace</u>, ante. Como

---

[11] Cabe destacar que entre las diferentes divisiones de la Autoridad no existe restricción alguna que impida que los abogados de una división compartan información relativa a sus

mencionáramos, este grado de discreción les fue reconocido por la misma Junta a los abogados en cuestión. Ciertamente, este grado de discreción, al igual que la identidad con los intereses patronales son factores determinantes a la hora de identificar quiénes son empleados gerenciales.

Respecto al asunto de política pública, es preciso destacar que este concepto no sólo alude a situaciones en las que los empleados deciden cuál será la política gerencial. Esta acepción incluye también a aquellas personas que influyen efectivamente en su formulación y a los que hacen operativa la misma. Véase: N.L.R.B. v. Bell Aerospace, ante. Cabe entonces preguntarse si los abogados, como asesores jurídicos, aunque no dictaminan cuál habrá de ser la política patronal respecto a determinado asunto, inciden de manera directa y efectiva en la determinación de la misma emitiendo recomendaciones y sus puntos de vista respecto a la legalidad y corrección de variados asuntos y ayudando a poner en vigor dicha política patronal. La respuesta parece ser evidentemente en la afirmativa. En ese sentido, es también responsabilidad de estos abogados evitar que su cliente lleve a cabo determinadas acciones que no encuentran apoyo en la ley.

Sin dudas, como asesores legales y representantes de la Autoridad, estos abogados no sólo se identifican con los intereses de ésta sino que ejercen, como previamente expusimos, influencia efectiva en el diseño e implementación

---

casos con los abogados de otra. De hecho, la Autoridad sostiene que ésta es, precisamente, la práctica.

de la política gerencial para lo cual, naturalmente, despliegan discreción.

De lo anterior, forzoso es concluir que los referidos abogados satisfacen las exigencias que requiere la normativa de empleado gerencial y, asimismo, las de empleado confidencial. Debemos reconocer que si bien los abogados de la Autoridad son empleados de ésta, entre la Autoridad y éstos existe una relación de abogado-cliente, la cual inevitablemente supone una relación de absoluta confianza y la más devota lealtad.

Examinada la naturaleza de las tareas que realizan los abogados de la Autoridad, tenemos que concluir que los mismos están excluidos de la masa trabajadora a la cual le asiste el derecho de organizarse para fines de negociar colectivamente así como para llevar a cabo otras actividades concertadas. Erró la Junta al concluir en contrario.


                                   V

Por los fundamentos antes expuestos, se confirma la Sentencia dictada el 28 de enero de 2001 por el Tribunal de Circuito de Apelaciones, revocatoria la misma de la Decisión y Orden de Elecciones emitida por la Junta de Relaciones del Trabajo de Puerto Rico, mediante la cual la Junta determinó que los abogados de la Autoridad podían constituir una unidad apropiada para fines de negociación colectiva y ordenó la celebración de las correspondientes elecciones.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LOPEZ
Juez Asociado

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**


Autoridad de Acueductos y
Alcantarillados

    Recurrida

        vs.               CC-2001-452    CERTIORARI

Unión de Abogados de la
Autoridad de Acueductos y
Alcantarillados

    Peticionaria


SENTENCIA


**San Juan, Puerto Rico, a 11 de diciembre de 2002**


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones, revocatoria la misma de la Decisión y Orden de Elecciones emitida por la Junta de Relaciones del Trabajo de Puerto Rico, mediante la cual la Junta determinó que los abogados de la Autoridad podían constituir una unidad apropiada para fines de negociación colectiva y ordenó la celebración de las correspondientes elecciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton disiente y reitera los criterios esbozados en su Opinión disidente en U.P.R. v. Assoc. de Prof. Universitarios, 136 D.P.R. 335, 416 (1994). El Juez Presidente señor Andréu García no intervino.


                    Patricia Otón Olivieri
              Secretaria del Tribunal Supremo