ORDEN
Debido a la inhibición del Juez Presidente Señor Hernández Denton y a la no intervención de los Jueces Asociados Señores Rebollo López y Fuster Berlingeri, se constituye una Sala Especial integrada por el Juez Asociado Señor Rivera Pérez, como su presidente, y las Juezas Asociadas Señoras Fiol Matta y Rodríguez Rodríguez para atender el caso CC-2004-1212, Mun. San Juan v. Plaza Las Américas.
Lo decretó y firma.
(Fdo.) Federico Hernández Denton

Juez Presidente

CERTIFICO:

(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

Daniel Martínez Oquendo, Maretsa Rodríguez Pórtela, José A. Andréu García y José R. Lázaro Paoli, abogados de la parte peticionaria; Carlos D. Rodríguez Boneta, abogado del Municipio de San Juan, parte recurrida; Salvador J. Antonetti Stutts, procurador general, Mariana D. Negrón Vargas, subprocuradora general, y Lizette Mejías Avilés, procuradora general auxiliar, representantes de la Administración de Reglamentos y Permisos, parte recurrida; Vanessa García Quiñones, abogada de la Junta de Planificación, parte recurrida.
El Juez Asociado Señor Rivera Pérez
emitió la opinión del Tribunal.
El presente recurso nos permite determinar si el Tribunal de Apelaciones actuó correctamente al confirmar dos resoluciones consideradas por dicho foro mediante un recurso de revisión judicial. En específico, una resolución emitida por la Junta de Planificación (Junta), autorizando un proyecto institucional presentado por el gobierno municipal de San Juan y otra resolución emitida por la Admi *316 nistración de Reglamentos y Permisos (A.R.Pe.), aprobando un anteproyecto sometido por el mismo municipio. Veamos los hechos que originan el presente recurso.
I
El 19 de febrero de 2002, el municipio de San Juan (Municipio) presentó ante la Junta una Consulta de Ubicación para la autorización de un proyecto institucional comercial en los predios del Complejo Deportivo de la Capital, propiedad del Municipio, en la Avenida F.D. Roosevelt. Según surge de la referida consulta, el proyecto institucional propuesto consiste en la construcción de un edificio de exhibiciones (Expo Center) que formará parte del Coliseo Roberto Clemente.(1)
El 29 de abril de 2002, la Junta emitió una Resolución que dejó en suspenso la referida consulta por treinta días para que “la parte proponente rediseñ[ara] la propuesta de forma tal que cumpliera] con los espacios de estacionamientos requeridos mediante la reglamentación vigente”.(2) El Municipio sometió, entonces, un segundo Memorial Descriptivo. Mediante éste, el Municipio propuso añadir una nueva estructura de estacionamiento que aumenta la capacidad del Complejo Deportivo de la Capital por unos 654 espacios adicionales.(3) Propuso, conjuntamente, un aumento de unos nueve mil pies cuadrados al *317 área de exhibiciones presentada en la consulta original.(4) Surge del Memorial Descriptivo que, debido a la naturaleza del proyecto, el Municipio solicitó que la Junta autorizara proceder “con los permisos subsiguientes que conduljeran] a la construcción del Nuevo Edificio de Exhibiciones y al edificio de estacionamiento de forma separada”.(5)
El 3 de mayo de 2002, Plaza las Américas, Inc. (Plaza) solicitó la intervención al procedimiento de consulta ante la Junta, alegando que el mismo presentaba un déficit de estacionamiento que causaría un caos en el área.(6) Específicamente, sostuvo que sus intereses propietarios resultarían adversamente afectados por el proceso llevado ante dicha agencia, ya que “los usuarios de las facilidades del Municipio de San Juan en el complejo deportivo hacen uso de las facilidades de estacionamiento de Plaza Las Américas, cuando las facilidades de estacionamiento de dicho complejo resultan insuficientes”.(7)
Ante la inacción de la Junta respecto a la referida solicitud de intervención, Plaza presentó una Segunda Solicitud de Intervención, en la que reiteró su interés en que se le permitiera intervenir en el proceso.(8)
El 31 de julio de 2003, Plaza presentó ante la Junta un Escrito Informativo. Informó a dicha agencia de la existencia de otro procedimiento administrativo, promovido también por el Municipio, en el cual se solicitaba la autorización de mía nueva construcción en los predios del Complejo Deportivo de la Capital; esta vez, señaló, para ampliar el *318 Estadio Hiram Bithorn.(9) Sostuvo que cada vez que el Municipio proponía nuevos proyectos en el Complejo Deportivo de la Capital ante la Junta, tomaba en consideración la totalidad del área de estacionamientos del Complejo Deportivo de la Capital como si el proyecto propuesto fuese la única operación a llevarse a cabo en éste. En otras palabras, sostuvo que de forma consistente el Municipio parte del supuesto equivocado de que el área de estacionamiento disponible en el Complejo Deportivo de la Capital es para servir al proyecto propuesto, lo que tiene el efecto de ignorar los otros usos que se le dan a los predios del referido Complejo y que generan una gran necesidad de espacios de estacionamiento. Finalmente, argüyó que lo anterior afecta gravemente sus operaciones, por lo que “no tiene otra alternativa que oponerse a todo nuevo proyecto en el Complejo Deportivo hasta que se provean las áreas de estacionamiento necesarias y requeridas para la operación del mismo en su totalidad”.(10)
Luego de varios trámites procesales, el 4 de septiembre de 2002 la Junta notificó su Resolución de 6 de agosto de 2002, en la que se aprobó la consulta en cuestión. En su resolución aceptó la intervención solicitada por Plaza.(11) Entre los acuerdos considerados en dicha resolución, señalamos los siguientes:
Del examen y análisis hecho se desprende que es viable el desarrollo de los terrenos anteriormente descritos para el uso propuesto, condicionado a los siguientes señalamientos y recomendaciones, los cuales habrán de tomarse en consideración al prepararse y someterse en la próxima etapa del trámite del proyecto, etapa que será determinada por la Administración de Reglamentos y Permisos:
1. Se autoriza un proyecto institucional que consiste de un edificio anexo al Coliseo Roberto Clemente, el cual será dedicado a sala de exhibiciones. El mismo tendrá un área de cons *319 tracción total de 107,525 pies cuadrados, de los cuales 40,000 pies cuadrados serán dedicados al salón principal, 18,290 pies cuadrados para áreas de pre-función, entre otros. Además, se propone un edificio de estacionamiento para un total de 1,457 espacios de estacionamiento a proveerse.
3. Deberá cumplir con las disposiciones del Reglamento Número 4 en cuanto a la provisión de estacionamiento.
4. Se acepta como interventor al licenciado Daniel Martínez Oquendo en representación de Plaza Las Americas. (Énfasis suplido.)

Nada expresó la Junta en su resolución respecto a la disposición reglamentaria utilizada para el cálculo de los estacionamientos requeridos para el proyecto evaluado.

Al día siguiente, el Municipio le solicitó a la Junta, sin éxito, que aclarara la referida resolución.(12) Por su parte, Plaza solicitó la reconsideración de la resolución. La Junta declaró “sin lugar” dicha solicitud, luego de acogerla y concederle a las partes varios plazos para presentar sus respectivas posiciones.
Por otro lado, el 14 de noviembre de 2002, el Municipio presentó ante A.R.Pe. un anteproyecto para su aprobación. El 3 de febrero de 2003, A.R.Pe. aprobó el anteproyecto mediante una resolución a esos efectos.
Inconforme con ambas determinaciones, Plaza acudió al Tribunal de Apelaciones mediante sendos recursos de revisión judicial. Dicho foro consolidó ambos recursos, expidió el auto solicitado y confirmó ambas resoluciones.
Insatisfecha, Plaza acudió ante nos mediante un recurso de certiorari el 23 de diciembre de 2004, y señaló los errores siguientes:

PRIMER ERROR: Erró el TA al confirmar determinaciones de la JP y A.R.Pe. mediante las que se autorizó un proyecto en 
*320
el Complejo Deportivo de San Juan cuando éste presenta un serio déficit de espacios de estacionamiento, violando las disposiciones del Reglamento de Zonificación (Reglamento de Planificación Núm. 4) sobre esa materia.

SEGUNDO ERROR: Erró el TA al confirmar una determinación de la JP mediante la que se autorizó el proyecto objeto del caso de epígrafe sin escuchar a la Peticionaria, violando el derecho de ésta a que no se afecten adversamente sus derechos propietarios sin un debido proceso de ley.

TERCER ERROR: Erró el TA al confirmar unas determinaciones de la JP y la A.R.Pe. mediante las que se autorizó el proyecto objeto de consulta en violación a lo dispuesto en la Ley Número 183 de 17 de agosto de 2002. (Énfasis suplido.) Petición de certiorari, pág. 9.
Habiendo comparecido las partes litigantes por medio de sus respectivos alegatos, estamos en posición de resolver los asuntos traídos ante nuestra consideración. Veamos.
II
Mediante el primer señalamiento de error, nos corresponde determinar si actuó correctamente el Tribunal de Apelaciones al confirmar las resoluciones de la Junta (respecto a la consulta de ubicación) y de A.R.Pe. (anteproyecto). Es el argumento de Plaza que la Junta interpretó incorrectamente la reglamentación aplicable al catalogar erróneamente el proyecto como un proyecto nuevo cuando debió haberlo considerado como una ampliación al Complejo Deportivo de la Capital. Ello, en su opinión, porque el referido complejo es uno solo y cada nueva facilidad que se le añade tiene el efecto de ampliarlo. Según razona, por tratarse de una ampliación, aplica la See. 74.01(4) del Reglamento de Zonificación de Puerto Rico (Reglamento de Planificación Núm. 4 de la Junta de Planificación de Puerto Rico), pág. 259 (Reglamento Núm. 4).(13) Veamos.
*321 La Junta es el organismo gubernamental creado con el propósito de desarrollar los recursos humanos, económicos, ambientales y físicos de forma coordinada para crear las condiciones necesarias que propendan al desarrollo integral de la sociedad.(14) Su creación obedece a la necesidad de velar por la ordenada y adecuada utilización de nuestros escasos terrenos y recursos naturales.(15)
Por su parte, de acuerdo con la Ley Núm. 76 de 24 de junio de 1975, según enmendada,(16) A.R.Pe. tiene la responsabilidad de ejecutar las funciones operacionales que hasta entonces desempeñaba la Junta, y de aplicar y velar por que se cumpla con las leyes y los reglamentos de planificación.(17) Por ello, se dispuso que A.R.Pe. debía establecer un estrecho enlace y una coordinación, entre otros, con organismos gubernamentales, como la Junta, para lograr que la política pública sobre el desarrollo económico, social y físico de Puerto Rico se estructure mediante el esfuerzo integral de todos los organismos gubernamentales.(18)
Al amparo de las facultades delegadas por ley, la Junta aprobó el Reglamento Núm. 4 para guiar y controlar el uso y desarrollo de los terrenos en Puerto Rico. De este modo, mediante la zonificación se establecen las normas esenciales para establecer o fijar los usos adecuados para todos los terrenos del país.
El Reglamento Núm. 4 establece los métodos objetivos para hacer los cálculos matemáticos que permiten determinar el número específico de espacios de estaciona *322 miento requeridos de acuerdo con el tipo de proyecto. En específico, la Sec. 74.03 del referido cuerpo reglamentario, págs. 262-263, dispone, en cuanto a los espacios de estacionamiento necesarios, lo siguiente:
Provisión de espacios de Estacionamiento de Vehículos -Los espacios mínimos de estacionamiento de vehículos a proveerse se determinarán según se indica a continuación:
8. Escuelas comerciales o vocacionales, colegios o universidades, auditorios, salones de convenciones, teatros, cinematógrafos, estudios, estadios, hipódromos, canódromos, velódromos, redondeles de patinaje, galleras, parques de recreación comercial, funerarias, o cualquier otro sitio similar de reunión pública-Por lo menos un (1) espacio por cada cinco (5) asientos, o parte de éstos, que se provea para tales fines.
Por su parte, la See. 74.01(4) del concernido reglamento, pág. 259, establece que “[e]n los casos de ampliaciones a edificios, la nueva área de estacionamiento requerida se calculará tomando en cuenta los usos existentes y los propuestos para la ampliación del edificio” (énfasis suplido), siendo la ampliación definida como “[l]a extensión o aumento en el área bruta de piso o en la altura de una estructura”.(19)
En conformidad con la Sec. 3.14 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico(20) (L.P.A.U.), al ejercer nuestra función revisora son de suma importancia las determinaciones de hecho y conclusiones de derecho consignadas en una decisión administrativa. Entre los importantes objetivos que persigue efectuar determinaciones de hecho y conclusiones de derecho, cabe resaltar los siguientes: (1) propor *323 cionar a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilitar esa tarea; (2) fomentar que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción; (3) ayudar a la parte afectada a entender por qué el organismo administrativo decidió como lo hizo y así, estando mejor informada, poder decidir si acude al foro judicial o acata la determinación, y (4) evitar que los tribunales se apropien de funciones que corresponden propiamente a las agencias administrativas bajo el concepto de especialización y destreza (expertise).(21)
Reiteradamente hemos reconocido que las determinaciones de los organismos administrativos especializados merecen gran consideración y respeto.(22) Recientemente, en Hernández, Álvarez v. Centro Unido, 168 D.P.R. 592 (2006), reafirmamos que lo anterior se fundamenta en la vasta experiencia y el conocimiento especializado que poseen las agencias acerca de los asuntos que se le encomiendan. Por ello, el criterio rector al revisar las determinaciones administrativas es la razonabilidad en la actuación de la agencia recurrida.(23)
Así, la L.P.A.U. dispone que el tribunal sostendrá las determinaciones de hecho de las agencias si se basan en evidencia sustancial que obre en el expediente administrativo; es evidencia sustancial aquella evidencia que una mente razonable podría aceptar como adecuada para sostener una conclusión.(24) Lo anterior pretende “evitar la sustitución del criterio del organismo administrativo en *324 materia especializada por el criterio del Tribunal revisor”.(25)
No obstante, las conclusiones de derecho de los organismos administrativos que no involucren interpretaciones efectuadas dentro del ámbito de especialización de la agencia concernida son revisables en toda su extensión.(26) Hemos resuelto que, como regla general, los tribunales deben darle peso a las interpretaciones que la agencia administrativa hace de aquellas leyes particulares que le corresponde poner en vigor, por lo que no pueden descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio.(27)
Por ello, los tribunales se abstendrán de avalar o deferir a la interpretación de la agencia si ésta: (1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales.(28) Es decir, esta deferencia judicial a la pericia administrativa cede ante una actuación irrazonable o ilegal.(29) Ello porque a los tribunales no les corresponde imprimir un sello de corrección, so pretexto de deferencia, para avalar situaciones en que la interpretación de la agencia resulte contraria a derecho.(30)
En síntesis, la revisión judicial de las determinaciones administrativas se limita a determinar si la actuación administrativa fue razonable y ésta cede sólo cuando está presente alguna de las situaciones siguientes: (1) *325 cuando la decisión no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación ilegal o una decisión carente de una base racional.(31)
En el presente caso, el Tribunal de Apelaciones concluyó que el proyecto propuesto no era una ampliación, sino un proyecto nuevo. Por tratarse de una nueva edificación, sostuvo que el Municipio cumplió con la reglamentación vigente al proveer un espacio de estacionamiento por cada cinco asientos, según requerido por la Sec. 74.03 del Reglamento Núm. 4, supra. Ello, sostuvo, luego de que la Junta le requirió al Municipio que rediseñara la propuesta original de forma tal que cumpliera con los espacios de estacionamiento necesarios.
Sin embargo, Plaza arguye que aplica la See. 74.01(4) del Reglamento Núm. 4, supra. Este razonamiento se fundamenta, en su opinión, en que el Complejo Deportivo de la Capital y todos sus elementos ubican en un solo predio y comparten sus accesos y áreas de estacionamiento, por lo que se compone de elementos diversos de un solo predio. Por ello, sostiene, que cada nueva facilidad tiene el efecto de ampliarlo y aumentar la capacidad para albergar público en sus diferentes componentes. Finalmente, alega que la Junta y A.R.Pe. autorizaron un proyecto que tiene un déficit serio de estacionamientos, incumpliendo con las disposiciones del Reglamento Núm. 4, ya que los espacios de estacionamiento se deben calcular tomando en consideración los usos existentes y los propuestos para la ampliación del edificio.
Cabe señalar que, tanto en la consulta de ubicación presentada por el Municipio como en la Resolución de la Junta en la que se aprobó la misma, surge que el proyecto propuesto consiste de un edificio anexo al Coliseo Roberto Clemente. Específicamente, la consulta de ubicación lo *326 describe como “un edificio de exhibiciones el cual formará parte del edificio del Coliseo Roberto Clemente”. (Enfasis suplido.)(32) Más aún, en la consulta de ubicación original el Municipio reconoció que el proyecto requerirá modificaciones a la estructura del Coliseo Roberto Clemente. También, en la resolución en que se aprobó la consulta de ubicación, la Junta claramente expresó que se trataba de “un proyecto institucional que consiste de un edificio anexo al Coliseo Roberto Clemente”. (Enfasis suplido.)(33)
Con ello en mente, y de acuerdo con lo dispuesto en el Reglamento Núm. 4, el proyecto institucional vendría a formar parte del Coliseo Roberto Clemente. Por encontrarse unido al Coliseo Roberto Clemente, el Expo Center representaría una ampliación al referido Coliseo.(34) Ello, no porque consideremos al Complejo Deportivo de la Capital como un solo predio donde cada nueva facilidad que se añade tiene el efecto de ampliarlo (como alega Plaza),(35) sino porque el Reglamento Núm. 4 define expresamente ampliación como extensión o aumento en el área bruta del piso o en la altura de una estructura, lo que implica extender o ampliar las dimensiones de una estructura ya existente, como en el presente caso.
Ante el silencio de la Junta de explicar la disposición reglamentaria que utilizó para calcular los espacios de estacionamiento necesarios, no encontramos el fundamento utilizado por el foro intermedio apelativo para concluir que la disposición aplicable es la Sec. 74.03 del Reglamento Núm. 4, supra. Un estudio cuidadoso del expediente ante nos tampoco sostiene la conclusión del Tribunal de Apela *327 dones, de que la consulta de ubicación en controversia no propone ampliar el Coliseo Roberto Clemente.(36)
Concluido que el Expo Center es una ampliación del Coliseo Roberto Clemente, procede que devolvamos el caso a la Junta para que determine, en conformidad con lo aquí resuelto, si de acuerdo con lo dispuesto en la See. 74.01(4) del Reglamento Núm. 4, supra, los 1,457 espacios de estacionamiento serían suficientes; es decir, si la anterior cifra se calculó tomando en cuenta los usos existentes del Coliseo Roberto Clemente y los propuestos para el Expo Center como lo exige la citada See. 74.01(4), en los casos de ampliaciones.
Finalmente, resulta imperativo señalar que notamos una deficiencia en el Reglamento Núm. 4 en cuanto a la forma de calcular los espacios de estacionamiento requeridos en situaciones como la presente. Un cuidadoso estudio revela que no existen normas que atiendan adecuadamente este asunto como parte de una consulta de ubicación de un proyecto donde existe toda una gama de instalaciones recreativas que comparten un mismo predio. Para evaluar la cantidad de estacionamientos que requiere una estructura o facilidad, el reglamento establece métodos objetivos para determinar el número específico de espacios de estacionamiento requeridos. Sin embargo, si el proyecto objeto de una consulta es definido como una nueva edificación, el reglamento no exige que se consideren los usos de otros edificios existentes en el mismo predio al determinar la cantidad de espacios de estacionamiento requerida, como sí lo requiere en caso de una ampliación. Ello, haciendo abstracción a una realidad existente en predios como el Complejo Deportivo de la Capital. Nos preguntamos, ¿que sucedería cuando existen una serie de instalaciones que bien podrían considerarse como edificaciones independientes pero que, a la vez, comparten un solo predio? *328 ¿No militaría contra la ordenada y adecuada utilización de nuestros terrenos y recursos naturales el que el reglamento permita que se ignore la posible deficiencia de estacionamientos con el simple hecho de que se proponga una nueva edificación? ¿Es que, acaso, por. el hecho de que una edificación no represente una extensión o aumento en el área bruta del piso o en la altura de otra, no habría que considerar los usos combinados que se le da al mismo predio?
Resuelto lo anterior, nos corresponde determinar si actuó incorrectamente el foro intermedio apelativo al confirmar una determinación de la Junta que autorizó la consulta de ubicación "sin escuchar” a la aquí peticionaria. Es la posición de Plaza que el enorme déficit de estacionamientos en el Complejo de Deportivo de la Capital le ocasionaría serios daños porque las personas que visitan el Coliseo Roberto Clemente utilizan el estacionamiento de Plaza ante el enorme déficit de estacionamientos del mencionado Complejo. Lo anterior, alega, viola su derecho al debido proceso de ley. Sostiene que autorizar al Municipio a construir nuevas instalaciones con un déficit de estacionamiento menoscaba el disfrute de su estacionamiento, que fue costeado por sus inquilinos y clientes. Alega, además, que el Municipio no le notificó oportunamente del proyecto, que la Junta no resolvió oportunamente su solicitud de intervención y no celebró vistas públicas para considerar la consulta.
Para que se active la protección del debido proceso de ley en su vertiente procesal tiene que haber un interés de libertad o propiedad afectado. Cumplida tal exigencia, hay que determinar cuál es el procedimiento exigido. Si bien la característica medular es que el procedimiento debe ser justo, a través de la jurisprudencia normativa se han identificado componentes básicos del debido proceso de ley, tales como una notificación adecuada y la oportunidad de ser escuchado y de defenderse. Al determi *329 nar si un procedimiento cumple con los requisitos constitucionales del debido proceso de ley, deben analizarse los factores siguientes: (1) el interés privado que se pueda ver afectado por la actuación oficial; (2) el riesgo de una determinación errónea debido al proceso utilizado y el valor probable de garantías adicionales o distintas, y (3) el interés gubernamental protegido.(37)
Específicamente, en el contexto del derecho administrativo, la notificación es un requisito indispensable para la validez del procedimiento administrativo de carácter adjudicativo en sus distintas etapas, por lo que el requisito de ser oído implica el de haber sido notificado.(38)
Del mismo modo, la notificación de órdenes, resoluciones y sentencias ha sido reiteradamente protegida por nuestro ordenamiento jurídico, ya que sirve un propósito lógico y sabio en la administración de la justicia. Ello permite a las partes advenir en conocimiento real de la determinación tomada, a la vez que le otorga a las personas cuyos derechos pudieran verse transgredidos una mayor oportunidad de determinar si ejercen o no los remedios que se le han concedido por ley.(39)
La See. 2.3 de la L.P.A.U., 3 L.P.R.A. see. 2123, dispone que las agencias están obligadas a celebrar vistas públicas si su ley orgánica u otra ley así lo dispone. Sin embargo, tienen discreción para determinar la necesidad de celebrarlas en las demás circunstancias.
El Reglamento para Procedimientos Adjudicativos de la Junta de Planificación dispone, en lo pertinente, lo siguiente:
La Junta podrá ordenar la celebración de vistas administra *330 tivas a iniciativa propia o a petición de partes, o vistas públicas en cualquier caso en que entienda que merecen seguir ese procedimiento, cuando así lo establezca la reglamentación o legislación vigente.(40)
Sin embargo, en conformidad con su ley orgánica, la Junta debe ejercer sus funciones cumpliendo con la política pública que se le encomendó de “fomentar la participación de la ciudadanía en el proceso de planificación de Puerto Rico”.(41) Específicamente, es deber de la Junta “ofrecer el máximo de participación posible a la ciudadanía en el proceso de planificación”.(42)
No albergamos duda de que Plaza tiene un interés propietario que podría verse afectado con la aprobación de un nuevo proyecto en el Complejo Deportivo de la Capital. Cientos de personas, al visitar las diferentes instalaciones del Complejo Deportivo de la Capital cuando se celebran diferentes eventos, utilizan los edificios de estacionamiento de Plaza. Por ello, lejos de ser especulativo, el interés propietario de Plaza que le lleva a procurar que cada nuevo proyecto que intente añadir el Municipio en el Complejo Deportivo de la Capital cuente con los espacios de estacionamiento requerido, no podía ser livianamente atendido por la Junta.
Además de la actuación de la Junta de no resolver oportunamente la solicitud de intervención presentada por Plaza, de la imprecisión de la Junta al resolver cuál es la disposición del Reglamento Núm. 4 que utilizó como fundamento de su aprobación y de la deficiencia —ya señalada— que existe en el Reglamento Núm. 4 para atender casos como el presente, nos parece que la Junta debió ha *331 ber celebrado una vista pública.(43) De esta forma se garantizaría adecuadamente el debido proceso de ley de Plaza.
Después de todo, al ejercer su discreción, la Junta no puede dejar de cumplir con la propia ley que la creó ni hacer abstracción de la política pública por la cual fue creada. De acuerdo con su ley orgánica, es su deber ofrecer el máximo de participación posible a la ciudadanía en el proceso de planificación. Al evaluar una consulta de ubicación en un área como el Complejo Deportivo de la Capital, debe hacer un cuidadoso análisis, de modo que se pueda evitar y corregir cualquier deficiencia en espacios de estacionamiento que exista. Sólo de esta forma podrá cumplir cabalmente la política pública que se le encomendó: velar por la ordenada y adecuada utilización de nuestros escasos terrenos y recursos naturales.
Como advertimos en Mun. de San Juan v. J.C.A., 152 D.P.R. 673 (2000), tanto la Junta como A.R.Pe. comparten unas facultades de gran alcance que se pueden prestar para abusos serios tanto cuando se conceden los permisos que se solicitan como cuando se deniegan. Por ello, es de primordial importancia que sus actuaciones sean transparentes siempre.(44)
En vista del resultado al que llegamos al resolver el primer señalamiento de error y de que corresponde a la Junta evaluar si los 1,457 espacios de estacionamiento que proveería el edificio propuesto serían suficientes, resulta innecesario discutir el tercer señalamiento de error.
*332 hH hH hH
Por los fundamentos antes expuestos, revocamos al Tribunal de Apelaciones. Se devuelve el caso a la Junta para que cumpla con lo aquí resuelto.
El Juez Presidente Señor Hernández Denton se inhibió. Los Jueces Asociados Señor Rebollo López y Señor Fuster Berlingeri no intervinieron. La Juez Asociada Señora Rodríguez Rodríguez disintió sin opinión escrita.

 Apéndice de la Petición de certiorari, págs. 172-184. Específicamente se propuso la construcción de un edificio de exhibiciones, “el cual formará parte del edificio del Coliseo Roberto Clemente. El salón principal comprende 40,000pc, áreas de prefunción de 18,290pc, entre otras facilidades. El área de ocupación total será de 90550pc. [sic] El proyecto requerirá modificaciones a la estructura del Coliseo. La parte proponente señala que actualmente el Complejo Deportivo de la Capital cuenta con 3,968 espacios de estacionamiento. El edificio propuesto reducirá al menos 495 espacios, dejando 3,473pc [sic]. El Regí. 4 req. 5,830. La parte proponente señala que la Resol. JPI-4-15-99 permite que se consideren usos combinados no simultáneos y estacionamientos compartidos”. (Énfasis suplido.) íd., pág. 172.

 íd., pág. 152.

 íd., pág. 177.

 Según surge del memorial en cuestión, el referido aumento respondió a ciertos estudios de mercadeo y rentabilidad realizados por el municipio de San Juan que reflejaban que para asegurar la rentabilidad del área era necesario un área de exhibiciones “que no sea menor de 49,000p2”. Se destacó que el cálculo de espacios de estacionamientos, según propuesto, tomaba en cuenta el área adicional. Apéndice de la Petición de certiorari, pág. 178.

 Véase esc. 3.

 Apéndice de la Petición de certiorari, págs. 453-455.

 íd., pág. 453.

 íd., págs. 432-436.

 íd., págs. 109-113.

 íd.

 íd., págs. 54-60.

 Específicamente, solicitó que aclarara el inciso (3) (respecto a la provisión de estacionamiento) de su resolución original. Requirió, además, que se aclarara el área del pietaje total del proyecto, de forma que reflejara exactamente el área de construcción del edificio proyectado, en conformidad con el segundo Memorial Descriptivo. Apéndice de la Petición de certiorari, págs. 273-274.

 Reglamento Núm. 6211 de 5 de noviembre de 2000.

 Ley Orgánica de la Jnnta de Planificación de Puerto Rico, Ley Núm. 75 de 24 de junio de 1975 (23 L.P.R.A. sec. 62c). Véase, además, Mun. de San Juan v. Bosque Real, S.E., 158 D.P.R. 743 (2003).

 Art. VI, Sec. 19, Const. E.L.A., L.P.R.A., Tomo 1.

 23 L.P.R.A. sec. 71 et seq.

 23 L.P.R.A. sec. 71d(p).

 23 L.P.R.A. sec. 71d(r). Véase, además, Metropolitana S.E. v. A.R.Pe., 138 D.P.R. 200 (1995).

 Reglamento de Zonificación de Puerto Rico (Reglamento de Planificación Núm. 4 de la Junta de Planificación), Sec. 2.01, pág. 5 (Reglamento de Planificación Núm. 4).

 Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. see. 2164), según enmendada.

 Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85 (1997); Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265 (1987).

 Véanse: Hernández, Álvarez v. Centro Unido, 168 D.P.R. 592 (2006); P.C.M.E. v. J.C.A., 166 D.P.R. 599 (2005).

 íd.

 3 L.P.R.A. see. 2175. Véase Hernández, Álvarez v. Centro Unido, supra, citando a Otero v. Toyota, 163 D.P.R. 716 (2005).

 Hernández, Álvarez v. Centro Unido, supra.

 íd.

 Hernández, Álvarez v. Centro Unido, supra; Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 688 (2000).

S) Hernández, Álvarez v. Centro Unido, supra.

 íd.; T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70 (1999); Com. Seg. P.R. v. Antilles Ins. Co., 145 D.P.R. 226 (1998); Calderón v. Adm. Sistemas de Retiro, 129 D.P.R. 1020 (1992); Rivera v. A & C Development Corp., 144 D.P.R. 450 (1977).

 A.A.A. v. Unión Abo. A.A.A., 158 D.P.R. 273 (2002); Calderón v. Adm. Sistemas de Retiro, supra.

 Hernández, Álvarez v. Centro Unido, supra; Otero v. Toyota, supra.

 Apéndice de la Petición de certiorari, pág. 172.

 íd., pág. 267.

 En conformidad con el Diccionario de la Lengua Española, el término anexo se utiliza para referirse a “enlazar, unir”.

 Conforme a la definición de ampliación del Reglamento Núm. 4, no vemos cómo el Complejo Deportivo de la Capital puede ser considerado una “estructura” y el Expo Center una “ampliación”.

 Véase, por ejemplo, Apéndice de la Petición de certiorari, págs. 55, 172 y 310-329.

 Ramírez v. Romero Barceló, 112 D.P.R. 716 (1982).

 j) Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed. rev., Bogotá, Ed. Forum, 2001, págs. 365-366.

 Véase Asoc. Vec. Altamesa Este v. Mun. San Juan, 140 D.P.R. 24 (1996).

 Sec. 7.01 del Reglamento Núm. 6031, Departamento de Estado, 12 de noviembre de 1999, pág. 29.

 Art. 23 de la Ley Núm. 75, supra, 23 L.P.R.A. sec. 62v(a).

 23 L.P.R.A. secs. 62v(b) y 62v(c).

 Ya en Mun. de San Juan v. J.C.A., supra, expresamos que de acuerdo con la See. 3.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. see. 2155, cuando se presenta una solicitud de intervención, la agencia tomará en cuenta varios factores para decidir si concede o deniega la intervención requerida. Allí expresamos, además, que dicha solicitud claramente intima la obligación de la agencia de responder a tal solicitud, ya sea que la admita o la deniegue.

 Mun. de San Juan v. J.C.A., supra, pág. 699.