El Juez Asociado Señor Rivera García
emitió la opinión del Tribunal.
El recurso de autos nos brinda la oportunidad de expre-sarnos sobre la aplicabilidad del aumento trienal dispuesto en la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Ley Núm. 184-2004 (3 L.P.R.A. see. 1461 et seq.) (Ley Núm. 184), a los empleados públicos sindicalizados cuando aún no se ha aprobado un convenio colectivo. Además, de-bemos determinar si al denegarles dicho aumento, el pa-trono incurre en una práctica ilícita en el trabajo, en con-formidad con el Art. 9 de la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, Ley Núm. 45-1998 (3 L.P.R.A. secs. 1452a-1452c) (en adelante Ley Núm. 45). De igual forma, nos corresponde aclarar el alcance de la jurisdicción de la extinta Comisión de Relaciones del Tra-bajo del Servicio Público (Comisión). Esto en consideración a la tesis del Departamento de Asuntos del Consumidor en la cual se sostiene que la Comisión no tiene facultad para interpretar las disposiciones de la Ley Núm. 184.
A continuación hacemos un recuento del trasfondo fác-tico que dio génesis al asunto que nos ocupa.
I — !
La Unión de Servidores Públicos Unidos de Puerto Rico (SPU), que está certificada como representante exclusivo de los empleados de la unidad apropiada del Departamento *8 de Asuntos del Consumidor (DACo)([1]) presentó ante la Co-misión tres querellas en las cuales alegó que esta agencia había violado el Art. 9(9.1)(a) e (i) de la Ley Núm. 45 (3 L.P.R.A. sec. 1452(a) e (i))([2]) Particularmente, argüyó que el DACo incurrió en prácticas ilícitas en el trabajo al dene-gar el aumento trienal que provee el Art. 8(8.3)(2) de la Ley Núm. 184, supra, 3 L.P.R.A. sec. 1464b(2), a cinco emplea-dos por estar sindicalizados. La SPU sostuvo que estos em-pleados tenían derecho al aumento trienal, ya que el con-venio colectivo se estaba negociando y, por ende, no había entrado en vigor.
En respuesta a las querellas instadas, el DACo reiteró que en conformidad con lo dispuesto en el Art. 8(8.3)(3) de la Ley Núm. 184, supra,([3]) los acreedores del aumento eran únicamente los empleados gerenciales y aquellos no sindicalizados. Así, pues, señaló que no incurrió en prác-tica ilícita alguna, ya que el hecho de que el convenio co-lectivo estuviera en etapa de negociación, no implicaba que los querellantes no fueran empleados sindicalizados. En consecuencia, el DACo concluyó que al estar sindicaliza-dos, los querellantes estaban excluidos del aumento *9 reclamado. Además, planteó que la Comisión carecía de ju-risdicción para interpretar la Ley Núm. 184 y dirimir la controversia del aumento.([4])
Luego de varios trámites procesales, el 17 de agosto de 2007 se celebró la vista en su fondo ante el Oficial Exami-nador de la Comisión. El 7 de mayo de 2008 este emitió un Informe y Recomendaciones, en el cual aconsejó a la Comi-sión declarar “con lugar” las tres querellas presentadas en contra del DACo. Asimismo, el Oficial Examinador encon-tró que la agencia violó la Ley Núm. 45. No obstante, reco-mendó imponer una multa de tres mil dólares por tratarse de una controversia novel.([5]) Expresó, en su informe, que a los empleados querellantes no los cobijaba un convenio co-lectivo porque este se encontraba en la fase de nego-ciación.([6]) Consecuentemente, concluyó que en esa etapa del proceso los empleados querellantes estaban cubiertos por las disposiciones de la Ley Núm. 184. Ello así hasta tanto no se firmara y ratificara el convenio colectivo que establecería los nuevos términos y las condiciones de tra-bajo de los empleados sindicalizados.([7]) También, deter-minó que no concederle a esos empleados el aumento trie-nal tenía el efecto de desalentar a los empleados a unirse en sindicato. Por lo tanto, entendió que al así proceder, el DACo vulneró su derecho a la sindicalización en contra-vención a lo pautado en la Ley Núm. 45.([8])
Por su parte, el 2 de junio de 2008, el DACo presentó su alegato y solicitó que la Comisión no acogiera las recomen-daciones del Oficial Examinador. Empero, el 19 de diciem-bre de 2008, la Comisión emitió una Decisión y Orden en la que resolvió que el DACo incurrió en una práctica ilícita según el Art. 9(9.1)(a) e (i) de la Ley Núm. 45, supra. Opor- *10 tunamente, el 7 de enero de 2009, el DACo presentó una moción de reconsideración que la Comisión acogió. Subsi-guientemente, el 4 de marzo de 2009, la Comisión emitió una resolución declarando “no ha lugar” la petición de reconsideración.
Inconforme con ese proceder, el DACo incoó un recurso de revisión judicial ante el Tribunal de Apelaciones. En esencia, la agencia reprodujo las alegaciones previamente enunciadas ante la Comisión.([9]) Así las cosas, el 10 de marzo de 2010, el foro a quo confirmó mediante sentencia la resolución recurrida. En su dictamen, luego de indicar que los empleados querellantes estaban sindicalizados cuando solicitaron el aumento trienal, el foro apelativo in-termedio esgrimió el mismo razonamiento que avaló la Comisión.([10]) Es decir, sostuvo que desde el momento cuando empieza a regir el convenio colectivo entre las par-tes, quedan desplazadas las leyes y los reglamentos que aplican a los empleados bajo su contrato original de empleo.([11]) En consecuencia, confirmó la interpretación de la Comisión de que la Ley Núm. 184 cobija a los empleados sindicalizados cuando aún se encuentran en el proceso de negociación de su primer convenio colectivo.
No conteste con el dictamen del foro intermedio, el DACo acude ante este Tribunal y señala los siguientes errores:
Erró el [Tribunal de Apelaciones] al confirmar la determina-ción administrativa de la Comisión al adjudicar las Querellas CA-06-111, CA-06-122 y CA-06-150 aplicando a empleados sindicados las disposiciones de la Ley 184 sobre el aumento de retribución por concepto del pago del trienio, por carecer de jurisdicción la Comisión para adjudicar esta controversia.
*11 Erró el [Tribunal de Apelaciones] al confirmar la determina-ción administrativa de la Comisión al concluir que DACo in-currió en una práctica ilícita al amparo de las disposiciones de la Ley 45 por denegarle a los querellantes como empleados sindicados el aumento en retribución establecido en el inciso 3 de la Sección 8.3 del Artículo 8 de la Ley 184, 3 L.P.R.A. 1464b, por concepto del pago del trienio.
Erró este panel del [Tribunal de Apelaciones] al dictar la Sen-tencia recurrida en contra de lo resuelto por otros paneles del [Tribunal de Apelaciones], particularmente lo resuelto en Depto. del Trabajo v. Pilar Marrero García y [o]tros, KL-RA0800395, sosteniendo que la Ley 184 no aplica a empleados sindicados y por ende están impedidos de recibir el aumento trienal que establece dicha ley. Petición de certiorari, págs. 5-6.
La interrogante que debemos dilucidar se circunscribe a determinar si de acuerdo con la Ley Núm. 184, los emplea-dos sindicalizados que no tienen un primer convenio colec-tivo vigente son acreedores del aumento trienal. Adelanta-mos que a estos empleados no les aplica el referido aumento. Por considerar que la discusión del primer y se-gundo señalamiento de error dispone adecuadamente del presente recurso, se hace innecesario examinar el tercer planteamiento de error.
El 17 de diciembre de 2010, le ordenamos a la Secreta-ria de este Tribunal que expidiera un mandamiento de certiorari. Ambas partes han presentado sus respectivos alegatos. Contando con el beneficio de sus comparecencias, pasemos a resolver los errores en el orden en que fueron presentados.
II
A. Jurisdicción
El DACo aduce que la jurisdicción para dilucidar el caso corresponde a la Oficina de Recursos Humanos del Es- *12 tado Libre Asociado (ORHELA) y no a la Comisión.([12]) No le asiste la razón. Veamos.
’Leí jurisdicción es el poder o la autoridad que posee un tribunal o un organismo administrativo para considerar y decidir los casos que se someten ante su consideración. Cruz Parrilla v. Depto. Vivienda, 184 D.RR. 393 (2012). Los organismos administrativos, así como los foros judiciales, no tienen discreción para asumir jurisdicción donde no la hay. Id.
De esta manera, las agencias administrativas sola-mente pueden ejercer los poderes que su ley habilitadora expresamente les ha otorgado y aquellos que sean indispensables para llevar a cabo su encomienda primordial. López Nieves v. Méndez Torres, 178 D.P.R. 803 (2010); Ca-ribe Comms., Inc. v. P.R.T.Co., 157 D.P.R. 203 (2002). Así, pues, la ley es el medio por el cual el legislador autoriza y delega los poderes a la agencia administrativa para que actúe conforme a sus propósitos. Id. Por esta razón, una agencia no puede asumir jurisdicción sobre una actividad, materia o conducta cuando no está claramente autorizada por ley para ello. ASG v. Mun. San Juan, 168 D.P.R. 337 (2006). Es decir, ni la necesidad, ni la utilidad, ni la conve-niencia pueden sustituir al estatuto en cuanto a fuente de poder de una agencia administrativa. Martínez v. Rosado, 165 D.P.R. 582 (2005).
Por otro lado, dentro de los poderes delegados a una agencia administrativa mediante su ley habilitadora, es *13 posible una fusión entre facultades cuasilegislativas y cuasijudiciales. De esta forma, la agencia tendrá, tanto el poder de reglamentar como el de adjudicar las controver-sias comprendidas en su área de especialización o expertise. Caribe Comms., Inc. v. P.R.T.Co., supra.
Cónsono con lo enunciado, aquella actuación administrativa que no obedezca el poder que se le confirió mediante legislación, debe ser catalogada como ultra vires. Caribe Comms., Inc. v. P.R.T.Co., supra. En consecuencia, todos los actos u órdenes ejecutados por una agencia que se extralimitan de lo dispuesto en la ley habilitadora son erróneos y nulos. Id.
En atención a ello, al revisar la jurisdicción de una agencia hay que recurrir, en primer lugar, a su ley habilitadora; pues es esta la que define y delimita la extensión de la jurisdicción del organismo administrativo. Perfect Cleaning v. Cardiovascular, 162 D.P.R. 745 (2004). Por lo tanto, el tribunal en su función revisora, determinará si la actuación administrativa se ajusta o no al poder delegado. Caribe Comms., Inc. v. P.R.T.Co., supra. Para ello, es preciso interpretar la ley orgánica de la agencia atisbando la intención legislativa y así asegurar el resultado que quiso el legislador. ASG v. Mun. San Juan, supra; Vázquez v. A.R.Pe., 128 D.P.R. 513 (1991).
De otra parte, la Ley Núm. 184 “ere[ó] un Sistema de Administración de los Recursos Humanos enteramente armónico con la negociación colectiva, cuyo objetivo primordial [es] aplicar, evaluar y proteger el principio de mérito en el servicio público”.([13]) Así, en aras de descentralizar el manejo de los recursos humanos en el sistema público, se dispuso que las autoridades nominadoras administren el sistema de recursos humanos.
Igualmente, el referido estatuto creó a ORHELA, *14 ahora conocida como OCALARH,([14]) para asesorar, ayudar y supervisar a las agencias no excluidas de la Ley Núm. 184 en la administración del sistema de recursos humanos. Además, este organismo debe auxiliar y asesorar a las agencias a quienes le aplican las disposiciones de la Ley Núm. 45,([15]) en todo asunto relacionado con los procedi-mientos de certificación de organizaciones sindicales, y en cuanto a la negociación y administración de convenios co-lectivos en áreas relacionadas con los asuntos laborales.([16]) Así también, se le delegaron facultades cuasilegislativas dirigidas a reglamentar, modificar, promulgar o adoptar la normativa de aplicación general al sistema de recursos hu-manos en el servicio público para que se cumpla eficaz-mente con el principio de mérito.([17])
Por otra parte, mediante la Ley Núm. 45, que concedió a los empleados de agencias tradicionales del gobierno central el derecho a organizarse colectivamente y a negociar convenios colectivos, se creó la Comisión de Relaciones del Trabajo en el Servicio Público. Entre los poderes y las responsabilidades delegadas por el legislador a la Comisión están la obligación ministerial de interpretar, apli- *15 car y hacer cumplir las disposiciones de la Ley Núm. 45 en todo lo relativo a los procesos de organización, certificación y descertificación de organizaciones sindicales. De igual forma, esta legislación facultó a la Comisión para atender reclamaciones sobre prácticas ilícitas en las que hayan in-currido la autoridad nominadora o las organizaciones sindicales.([18])Depto. Estado v. U.G.T., 173 D.P.R. 93 (2008); Asociación Maestros v. Comisión, 159 D.P.R. 81 (2003). En-tre las acciones de las agencias que se consideran como una práctica ilícita están las siguientes:
(a) Intervenir, coartar o restringir a uno o más de sus em-pleados en relación con su decisión de ejercer o no los derechos reconocidos en esta Ley.
(i) Estimular o desalentar a los empleados a unirse a cual-quier organización sindical o a participar en las actividades de la misma mediante discriminación al emplear, despedir, con-ceder permanencia en el empleo o en relación a otros términos o condiciones de trabajo. Art. 9 de la Ley Núm. 45, supra, 3 L.P.R.A. sec. 1452a(a) e (i).
De lo antes expuesto se deduce que la Ley Núm. 45, antes de ser enmendada para fusionar la Comisión, dispo-nía que este organismo atendería toda querella sobre prác-ticas ilícitas en el trabajo realizadas por una agencia, or-ganización sindical o sus miembros. Dentro de ese esquema, el análisis incidental de estatutos distintos a la Ley Núm. 45 no le resta, de por sí, jurisdicción a la Comisión. Como mencionáramos, en el caso de autos se presentaron tres querellas según el palio de las disposicio-nes sobre práctica ilícita. En atención a ello, la SPU adujo que el DACo desalentó la sindicalización de los empleados *16 querellantes al negar el aumento trienal que dispone la Ley Núm. 184. Tratándose de la imputación de una prác-tica ilícita, lo cual es materia comprendida dentro de las facultades de la Comisión, resulta forzoso colegir que este organismo tenía la facultad para atender la controversia presentada ante su consideración. Conforme a lo anterior, concluimos que la evaluación de las disposiciones de la Ley Núm. 184 realizada por la Comisión fue necesaria.
Ahora bien, según el marco fáctico que hemos enun-ciado, la Comisión se excedió en el límite de sus poderes al interpretar las disposiciones de la Ley Núm. 184 en el sen-tido contrario a la intención del legislador. Por ello, al apli-car el texto de la citada ley fuera de los límites y el alcance impuestos por la Asamblea Legislativa, la Comisión actuó ultra vires en su decisión como agencia.
Conforme a lo expresado, resolvemos que la Comisión tenía jurisdicción para dilucidar el caso de autos en cuanto a las prácticas ilícitas del DACo. Empero, no así al arro-garse una interpretación de la Ley Núm. 184 fuera de los parámetros establecidos por el legislador.
Resuelto el planteamiento jurisdiccional, procedemos a examinar el estado de derecho relacionado a las demás controversias formuladas ante este Tribunal.
B. La sindicalización en el servicio público y la figura del convenio colectivo
Nuestro ordenamiento jurídico le reconoce a la mayoría de los empleados el derecho a unirse en organizaciones obrero-patronales y a negociar colectivamente. Mediante la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 mayo de 1945 (29 L.P.R.A. sec. 61 et seq.), se estableció por primera vez la política pública del Gobierno de Puerto Rico de fomentar la negociación colectiva para alcanzar el máximo desarrollo de la producción de nuestro país, los salarios y las condiciones de empleo adecuados para los obreros puertorriqueños. 29 L.P.R.A. see. 62. *17 Véase, además, C.O.P.R. v. S.P.U., 181 D.P.R. 299 (2011). Esta Ley Núm. 130 concedió a los trabajadores de las agen-cias corporativas del Gobierno que se dediquen o puedan dedicarse en el futuro a negocios lucrativos o a actividades con un beneficio pecuniario, el derecho a organizar sindi-catos y a negociar colectivamente. Véase Depto. Estado v. U.G.T., supra.
Posteriormente, con la aprobación de nuestra Constitución, en la Sec. 17 de la Carta de Derechos se consagró expresamente la garantía cardinal que posee todo empleado del sector privado y de ciertas agencias gubernamentales a la organización y a la negociación colectiva con su patrono. Específicamente, dicha sección establece que
[líos trabajadores de empresas, negocios y patronos privados y de agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados tendrán el derecho a orga-nizarse y a negociar colectivamente con sus patronos por me-diación de representantes de su propia y libre selección para promover su bienestar. Art. II, Sec. 17 de la Carta de Dere-chos, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 375.
Ahora bien, el esquema constitucional no les reconoció a los empleados del gobierno central el derecho a organizarse y a negociar colectivamente. Con el ánimo de extender este derecho estatutariamente, en 1998 se aprobó la Ley de Re-laciones del Trabajo para el Servicio Público de Puerto Rico (Ley Núm. 45). Esta legislación adoptó la política pública para reconocer el derecho a la organización sindical y a la negociación colectiva en el servicio público de Puerto Rico. Particularmente, el Art. 4 de la citada ley expresa que los empleados de las agencias del gobierno central tendrán el derecho a organizarse y afiliarse a organizaciones sindica-les que estén certificadas por la Comisión como represen-tantes exclusivas de los empleados.
A su vez, para que los empleados se puedan sindicalizar, es necesario que pertenezcan a una unidad apro- *18 piada, según determinada por la Comisión.([19]) Recordemos, pues, que la unidad apropiada constituye el “conjunto de empleos o puestos de características e intereses similares, agrupados para la negociación colectiva de términos y con-diciones de empleo o para elegir al representante a tales efectos”.([20]) A.E.E. v. U.T.I.E.R., 170 D.P.R. 564, 571 (2007). Sin embargo, debemos puntualizar que existen ciertos em-pleos que por razones de política pública están excluidos de la unidad apropiada.([21])
La doctrina jurisprudencial ha reconocido que *19 desde el momento en que se certifica la organización obrera, la unión queda autorizada como representante ex-clusiva de los empleados ante el patrono.([22]) Ese proceso está contenido en la propia Ley Núm. 45 y particularizado en el Reglamento de la Comisión.([23]) Esta regla establece el principio de que la certificación procede cuando una de las organizaciones sindicales obtiene el apoyo de la mayoría de los empleados de las unidades apropiadas que participen en votación secreta.([24]) Es decir, la certificación es el instru-mento por el cual los empleados autorizan a una organiza-ción sindical para que represente sus intereses frente al patrono, excluyendo la posibilidad de que cualquier otra organización los represente. Este proceso implica, sin duda, que una vez ocurre la certificación, los empleados que así deseen hacerlo se convierten en miembros de la unión y, por lo tanto, pasan a ser empleados sindicali-zados.([25])
La pauta legislativa reconoce que cuando un empleado pertenece a una unidad apropiada es opcional afiliarse a una organización obrera certificada. En lo pertinente, el Art. 17(17.1) de la citada Ley Núm. 45 establece que
[a]quellos empleados que formen parte de una unidad apro-piada para fines de negociación colectiva debidamente certifi-cada por la Comisión, que opten por no afiliarse ni ser repre-sentados por la organización obrera debidamente certificada, podrán solicitar ser excluidos de la misma mediante presenta-ción de una notificación al efecto al jefe de la agencia, con copia al representante exclusivo, dentro de los treinta (30) días siguientes a la notificación de la certificación del repre-sentante exclusivo. 3 L.P.R.A. see. 1454.
*20 Según estos pronunciamientos, el derecho a organizarse colectivamente implica, tanto la opción de afiliarse como la de no afiliarse a una organización sindical certificada.([26]) De acuerdo con este esquema, el derecho de los empleados que forman parte de una unidad apropiada a no afiliarse a una unión se debe ejercer dentro del periodo de los treinta días siguientes a la notificación de la certificación de la unión como su representante exclusivo.([27]) Una vez trans-curre el término de treinta días, el empleado se considera como sindicalizado si no ha ejercido su derecho a no afiliarse. Sin lugar a duda, esto último, no depende de la vigencia de un convenio colectivo.
Dentro de ese contexto, aquellos empleados que perte-necen a una unidad apropiada que decidan no afiliarse, disfrutarán de los servicios que provee el representante exclusivo en la negociación colectiva y en la administración de un convenio colectivo. Empero, el legislador dispuso que estos empleados deben contribuir pagando la mitad de la cuota regular que pagan los empleados sindicalizados.([28])
Asimismo, la Ley Núm. 45 define convenio colectivo como el “[a]cuerdo suscrito por las partes sobre salarios, beneficios marginales, términos y condiciones de empleo y otras disposiciones relativas a la forma y manera en que se desenvolverán las relaciones obrero-patronales en *21 una agencia”.([29]) Este Tribunal ha reconocido que ese acuerdo, como otros contratos, será la ley que regirá entre los empleados y el patrono, y será válido siempre que no contravenga la ley, la moral ni el orden público. U.I.L. de Ponce v. Dest. Serrallés, Inc., 116 D.P.R. 348, 352 (1985). La vigencia de tales convenios comienza cuando firman los miembros de la organización, luego de la ratificación.([30]) Su duración no podrá exceder de tres años, a no ser que se prorrogue por mutuo acuerdo y por un plazo definido. ([31]) Es importante señalar que la Ley Núm. 45 prohíbe, además, la retroactividad de la vigencia de los convenios colec-tivos. ([32])
Por otro lado, hemos sostenido que los empleados gerenciales o aquellos íntimamente ligados al quehacer gerencial no pueden formar parte de la unidad apropiada y, por lo tanto, están impedidos de recibir los beneficios derivados de la negociación colectiva. A.A.A. v. Unión Abo. A.A.A., 158 D.P.R. 273 (2002); NLRB v. Bell Aerospace Co., 416 U.S. 267 (1974). Esa limitación responde al estrecho vínculo que los une al patrono. ([33]) En consecuencia, las condiciones de empleo, los salarios y otros beneficios de aquellos empleados excluidos de la Ley Núm. 45 se regirán por los parámetros dispuestos por la Asamblea Legislativa. A contrario sensu, y según hemos establecido, a los empleados incluidos en la unidad apropiada se les reconocen todos los derechos que emanan de la Ley Núm. 45 y del convenio *22 colectivo negociado. A.E.E. v. U.T.I.E.R., supra; J.R.T. v. A.M.A., 119 D.P.R. 94, 100 (1987).
C. La Ley Núm. 184
De acuerdo con el marco jurídico discutido, la Ley Núm. 184 creó un sistema retributivo para los empleados públicos en armonía con el principio de mérito, la sindicalización y las negociaciones colectivas realizadas de acuerdo con la Ley Núm. 45.([34]) Obedeciendo las pautas dispuestas por esta medida, los organismos gubernamentales deben establecer los sueldos, así como otros beneficios relacionados al salario de sus respectivos empleados.
Cónsono con ello, la Ley Núm. 184 formuló “nor-mas generales” de retribución aplicables a todas las agencias. Así también, estableció “normas específicas” destinadas únicamente a los empleados no sindicalizados, gerenciales y aquellos excluidos de la Ley Núm. 45.([35]) Particularmente, el Art. 8(8.3)(3) de la Ley Núm. 184, supra, expresa así:
Las siguientes normas solo serán aplicables a los empleados no sindicados, gerenciales o empleados excluidos de la Ley Núm. 45 de 25 de febrero de 1998, según enmendada ... que laboran en el servicio público.
(3) Los empleados públicos no sindicados y gerenciales que hayan ocupado un puesto regular durante un período ininte-rrumpido de tres años de servicios, sin haber recibido ningún otro aumento de sueldo recibirán un aumento de hasta un cinco (5) por ciento de su sueldo a su equivalente en tipos *23 intermedios. Para esto, el empleado debe haber provisto servi-cios satisfactorios durante el período de tres años según evi-denciado en sus hojas de evaluaciones. La Autoridad Nomina-dora enviará una notificación escrita a todo empleado que no satisfaga esta consideración. La notificación incluirá las razo-nes por las cuales no se le concede al empleado el referido aumento, y le advertirá de su derecho de apelar ante la Comisión Apelativa. (Enfasis nuestro). Véase 3 L.P.R.A. sec. 1464b.
Al examinar, tanto el texto como el historial del referido precepto, se deduce claramente que la intención legislativa fue aprobar una norma específica aplicable única y exclu-sivamente a los empleados no sindicalizados, gerenciales o excluidos de la Ley Núm. 45. Con relación a esta distin-ción, el legislador puntualizó que la Ley Núm. 184
[t]iene las normas retributivas generales que quedan de apli-cación a las agencias así como las normas ... retributivas espe-cíficas que aplicarán solamente a los empleados no sindicados, gerenciales o excluid[o\s de la Ley 45. De hecho, fuimos bien, bien cuidadosos, señor Presidente, bien cuidadosos para que ninguna de las disposiciones de esta ley infringiera, trasto-cara, menoscabara, los derechos adquiridos bajo la negocia-ción colectiva a la que tienen derecho ahora los empleados pú-blicos bajo la Ley 45 y de hecho, los líderes sindicales que fueron participes de la discusión de este proyecto, así lo reco-nocen, dieron sus sugerencias, propusieron cambios y se reco-gieron, de manera de garantizar, meridianamente claro, que no hay una disposición del Proyecto que vaya a inferir, a socavar, menoscabar, o violentar o cualquier convenio colectivo y cual-quier derecho adquirido por los trabajadores que están sindi-calizados y que negocian colectivamente. P. de la C. 3844, 7ma Sesión Ordinaria de la Asamblea Legislativa, 16 de julio de 2004, pág. 7.
Como se puede observar, las disposiciones de la Ley Núm. 184 tienen el propósito “de diseñar un sistema retri-butivo compatible con la negociación colectiva que permita mantener una equidad y justicia al momento de implantar los procesos retributivos, tanto para empleados unionados como para los no unionados, incluyendo a los gerenciales”. *24 (Énfasis nuestro). ([36]) Ello, pues los empleados no sindicali-zados a quienes no les aplican las disposiciones de la Ley Núm. 45 y los empleados gerenciales necesitan igual justi-cia retributiva que aquellos que se pueden beneficiar de los acuerdos establecidos entre la unión que los representa y el patrono.
Como mencionáramos, ORHELA tiene entre sus funciones el deber de promulgar la normativa general del sistema de administración de recursos humanos en el servicio público. Igualmente, debe asesorar a las agencias administradoras en materia de retribución de empleados. En relación con esta responsabilidad ministerial, esta agencia emitió la Carta Normativa 1-2005 de 25 de enero de 2005, que posteriormente se convirtió en el Reglamento Núm. 6939 de 3 de febrero de 2005 intitulado “Normas generales sobre retribución conforme a la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico”. Es particularmente importante mencionar que en la parte VII de ese Reglamento se acentúa que la norma estatuida en el Art. 8(8.3) de la Ley Núm. 184 aplica solamente a los empleados no sindicalizados, gerenciales o empleados excluidos de la Ley Núm. 45, o sea, empleados que no ocupan puestos comprendidos en la unidad apropiada. Id., pág. 8. Además, el Reglamento aclara que la exclusión de los empleados comienza desde el momento en que se certifica a la unidad apropiada para la negociación colectiva y se certifica la organización sindical como la representante exclusiva.([37]) En lo pertinente, la referida normativa expresa lo siguiente:
VIL Normas Retributivas Aplicables a Empleados que no ocu-pan puestos en unidades apropiadas
*25 Las siguientes normas sólo serán aplicables a los empleados no sindicados, gerenciales o empleados excluidos de la Ley Núm. 45 de 25 de febrero de 1998, según enmendada, que laboran en el servicio público. Una vez la Comisión de Rela-ciones del Trabajo del Servicio Público certifica una unidad apropiada para fines de negociación colectiva y por consi-guiente, certifica una organización sindical como represen-tante exclusivo de los empleados, éstos quedan excluidos de las siguientes disposiciones. Estas normas retributivas tam-poco serán aplicables a aquellos empleados quienes optaron por no afiliarse a la unión, pero cuyos puestos están compren-didos en las unidades apropiadas.
C. Aumento por Años de Servicio
Los empleados públicos no sindicados y gerenciales que ha-yan ocupado un puesto regular durante un período ininte-rrumpido de tres años de servici[o], sin haber recibido ningún otro aumento de sueldo recibirán un aumento de hasta un cinco (5) por ciento de su sueldo o su equivalente en tipos intermedios. Para esto, el empleado debe haber provisto servi-cios satisfactorios durante el período de tres años según evi-denciado en sus hojas de evaluaciones. La Autoridad Nomina-dora enviará una notificación escrita a todo empleado que no satisfaga esta consideración. La notificación incluirá las razo-nes por las cuales no se le concede al empleado el referido aumento y le advertirá de su derecho de apelar ante la Comi-sión Apelativa del Sistema de Administración de Recursos Hu-manos del Estado Libre Asociado de Puerto Rico. Reglamento Núm. 6939, supra, págs. 8-10.
Es evidente que esta reglamentación es cónsona con la intención que tuvo el legislador al aprobar el P. de la C. 3844, que se convirtió en la Ley Núm. 184. En el Diario de Sesiones del referido proyecto se expresa que esta medida
... armoniza, por primera vez, la Ley de Servicio Público con la Ley de Sindicación de los Empleados Públicos [Ley Núm. 45]. ... [E]sta ley armoniza con la Ley 45 de forma y manera en que no haya choque entre la Sindicación de los Empleados Públi-cos y los empleados que no están sindicalizados o los emplea-dos que no tienen derecho a sindicalización pero que entonces le rige una ley protectora de sus derechos civiles, constitucio-nales, como trabajadores públicos. P. de la C. 3844 de 16 de julio de 2004, 7ma Sesión ordinaria de la Asamblea Legisla-tiva, pág. 4.
*26 Colegimos, pues, que la razón legislativa para circuns-cribir el aumento trienal a estos empleados es que aquellos que pertenecen a la unidad apropiada, a diferencia de los excluidos de esta, obtienen sus retribuciones, incluso los aumentos de salario, según las estipulaciones acordadas en el convenio colectivo.
III
Dentro del marco jurídico enunciado, pasemos al análisis y a la discusión de la controversia que nos ocupa.
Cuando el texto de la ley es claro y está libre de ambi-güedad debemos aplicar la ley según su lenguaje. No debe-mos obviar su letra so pretexto de cumplir su espíritu. 31 L.P.R.A. sec. 14. Véanse: Rullán Rivera v. A.E.E., 179 D.P.R. 433, 444 (2010); Garriga Villanueva v. Mun. de San Juan, 176 D.P.R. 182 (2009). En tales casos, resulta inne-cesario auscultar la intención legislativa fuera del texto de la ley. El lenguaje inequívoco del legislador es la expresión por excelencia de toda intención legislativa. Id.
Por otra parte, la doctrina de revisión judicial establece que las decisiones administrativas son objeto de deferencia judicial y se presumen correctas. IFCO Recycling v. Aut. Desp. Sólidos, 184 D.P.R. 712 (2012); Torres Santiago v. Depto. Justicia, 181 D.P.R. 969 (2011). Tal condescendencia judicial responde a la experiencia y al conocimiento especializado atribuible a los organismos gubernamentales. Id. Ahora bien, las determinaciones de hechos realizadas por una agencia serán sostenidas por el tribunal, siempre que estas se basen en evidencia sustancial que obre en el expediente. No obstante, las conclusiones de derecho serán revisables en toda su extensión,([38]) Por eso, las conclusiones de derecho se sostendrán cuando se *27 ajusten al mandato legislativo. Torres Santiago v. Depto. Justicia, supra.
Cónsono con lo anterior, la presunción de corrección de las decisiones administrativas cede cuando el foro administrativo abusa de su discreción al emitir una decisión que resulta ilegal, irrazonable o arbitraria. Mun. de San Juan v. CRIM, 178 D.P.R. 163 (2010). Así, pues, se extralimita de su discreción aquel organismo administrativo que desobedece el mandato legislativo. Es por ello que reiteradamente hemos sostenido que “cuando la interpretación del estatuto realizada por la agencia produzca resultados que son incompatibles o contrarios al propósito para el cual se aprobó la legislación y a su política pública, el criterio administrativo no podrá prevalecer”. IFCO Recycling v. Aut. Desp. Sólidos, supra, pág. 49. En esos términos, el profesor Demetrio Fernández nos comenta que
[l]a deferencia judicial se abandona en aquellas instancias y circunstancias en que la interpretación estatutaria es contra-ria al lenguaje o propósito expreso del estatuto. La acción ad-ministrativa que soslaya lo claramente establecido y pautado por el estatuto da lugar a que el tribunal deje sin efecto lo interpretado por el organismo administrativo. Además, si la interpretación adoptada por la agencia administrativa resul-tare en la declaración judicial de que ...el decreto administra-tivo implica un acto ultra vires, el tribunal procede a rechazar la interpretación substituyéndola con una que evite el confron-tamiento con esos problemas. (Enfasis nuestro).([39])
En el caso de marras, la Comisión interpretó el alcance de la Ley Núm. 184 en manifiesta contravención al Regla-mento de OREHLA y al propio mandato legislativo. Ambos preceptos legales excluyen a los empleados sindicalizados y los cobijados por la Ley Núm. 45 del aumento trienal. Al interpretar lo contrario, la decisión de la Comisión resulta ilegal e irrazonable. Según hemos observado, la Ley Núm. *28 184 armoniza el sistema de administración de recursos hu-manos con la negociación colectiva y sindicalización de los servidores públicos.
Al no conceder el aumento trienal a los empleados sin-dicalizados, el DACo cumplió con las pautas establecidas en la Ley Núm. 184 y en el citado Reglamento de OREHLA. Nótese que los empleados a quienes les aplica el Art. 8(8.3) de la Ley Núm. 184, supra, están excluidos de la sindicalización y, por ende, no obtienen los beneficios retri-butivos que se establecen en el convenio colectivo.
Las directrices establecidas por ORHELA a través de sus reglamentos están dirigidas a todas las agencias y tie-nen la misma fuerza vinculante que la ley.([40]) La Comisión no debió hacer abstracción de las disposiciones de la Ley Núm. 184 —ni de la reglamentación aplicable— para im-poner su propio criterio sobre el alcance de dicho estatuto. De modo arbitrario y caprichoso, la Comisión decidió que el aumento aplicaba a los empleados sindicalizados porque no tenían un convenio colectivo. Al así proceder, la Comi-sión se excedió de sus facultades y contravino lo dispuesto manifiestamente en el ordenamiento jurídico. Por consi-guiente, nos vemos precisados a concluir que estas accio-nes fueron ultra vires y nulas. De igual modo, incidió el foro apelativo intermedio.
Además, y acorde con lo intimado, es forzoso colegir que DACo no incurrió en práctica ilícita alguna. Los empleados en cuestión pertenecían a una unidad apropiada. Incluso, estaban afiliados a la SPU, una organización obrera debidamente certificada por la Comisión; por ello eran empleados sindicalizados. Si avaláramos la interpretación de la Comisión —que confirmó el Tribunal de Apelaciones— estaríamos resolviendo contrario a la política pública declarada expresamente en la Ley Núm. 184 y en el Reglamento Núm. 6939 de OREHLA. Igualmente, y *29 según hemos establecido, las disposiciones de la normativa vigente excluyen a todo empleado cobijado por la Ley Núm. 45 del beneficio del aumento trienal. Se colige, pues, que este aumento no aplica a aquellos que pertenecen a una unidad apropiada y que, ejerciendo su derecho a no afi-liarse, conservan el estado de empleados no sindicalizados. Por lo tanto, como incluso el empleado que pertenece a una unidad apropiada y no se ha sindicalizado tampoco es acreedor del aumento trienal, no podemos concluir que una autoridad nominadora que deniega dicho aumento a estos empleados está desalentando su sindicalización. Ello, pues el hecho de que se sindicalicen o no, no hará a los emplea-dos acreedores del aumento en cuestión. Este está dirigido a una población específica que por las características de su empleo se diferencia, entre otras cosas, por no poder recibir los beneficios de una negociación colectiva.
Para fundamentar sus dictámenes, la Comisión y el tribunal a quo citan Condado Plaza v. Asoc. Emp. Casinos P.R., 149 D.P.R. 347, 357 (1999), en el que expresamos que “los derechos y obligaciones dimanantes de las leyes esta-tales que pueden ser renunciados o alterados mediante contrato, se encuentran desplazados por los propios conve-nios colectivos”. Tal caso es distinguible y no aplica a la controversia de marras. Según lo dicta explícitamente la Ley Núm. 184, los empleados sindicalizados y aquellos co-bijados al amparo de la Ley Núm. 45 no son acreedores del aumento trienal. Así, pues, resolvemos que el foro apela-tivo intermedio y la Comisión incidieron al apartarse y ob-viar el texto claro de la referida legislación. Por consi-guiente, no se puede desplazar un derecho que nunca se tuvo.
Como enfatizamos antes, la legislación aplicable diáfa-namente preceptúa que, incluso aquellos empleados que pertenecen a una unidad apropiada y han ejercido su de-recho a no unionarse, no cualifican para recibir el aumento trienal. Entonces, aunque no se sindicalicen estarán en la *30 misma situación: recibir los eventuales beneficios deriva-dos de una negociación colectiva. Esto es necesario acla-rarlo, incluso con letras mayúsculas y hasta la saciedad. Aquí no se está colocando al empleado unionado en una peor situación. Ello porque el empleado que pertenece a una unidad apropiada, aunque no pase a formar parte de la unión, no puede recibir el aumento trienal. En otras palabras, si se reconoce y acepta la intención legislativa, la afiliación a una organización sindical es un hecho irrele-vante a los efectos de recibir el aumento trienal. Se trata, pues, de una consideración sui géneris para los empleados que ocupan puestos de trabajo que por razones de política pública no son aptos para organizarse y negociar colectiva-mente; como tampoco para recibir los beneficios derivados de la negociación.
Esperar determinado tiempo para que se otorgue el primer convenio colectivo en nada afecta la interpretación y aplicación de la ley conforme a su propósito. La exclusión de estos empleados del aumento trienal que hizo el legisla-dor fue expresa y así se deriva de la intención legislativa y del historial de la Ley Núm. 184, guste o no. Resulta lógico y razonable que se haya hecho esa diferenciación conside-rando el puesto de trabajo y la posibilidad que se tiene de poder organizarse colectivamente para negociar las condi-ciones de trabajo con el patrono. La “gracia legislativa” que la Ley Núm. 184 concede a los empleados gerenciales y a aquellos excluidos de la Ley Núm. 45, no es otra cosa que el reconocimiento de la limitación de estos empleados para luchar por mejores condiciones laborales cara a cara con el patrono.
Mediante la negociación, los empleados sindicalizados reciben mayores beneficios y protecciones. Por lo tanto, el “limbo” del cual se habla en el que quedarían estos si no reciben el aumento trienal, no es más que una hipótesis infundada. Es improcedente reclamar que se tiene derecho sobre un aumento que está dirigido a un grupo específico *31 de trabajadores, so pretexto de que es política pública que el empleado sindicalizado esté mejor en todo momento. Es nuestro criterio que la política pública a favor de la nego-ciación se encuentra en armonía con la intención legisla-tiva de promover aumentos a un grupo específico, en con-sideración a su imposibilidad de negociar y recibir los beneficios derivados de esa ventaja. Es imperativo puntua-lizar que el hecho de que no haya un primer convenio no quita que estos empleados estuvieran en vías de concretarlo.
Así, pues, permitirle a empleados que pertenecen a una unidad apropiada recibir el aumento dispuesto para los empleados gerenciales y aquellos que no les aplica la Ley Núm. 45, sería trastocar la intención del legislador y tam-bién la estabilidad financiera del Gobierno. Mediante nuestro proceder no se promueve el trastorno del ordena-miento laboral. Todo lo contrario. La política pública a favor de la sindicalización subsiste y en nada se menoscaba por nuestra adhesión a la intención de la Ley Núm. 184, la cual, a su vez, se complementa con las disposiciones esta-tutarias que promueven la negociación colectiva.
IV
Por los fundamentos expuestos, revocamos en parte la sentencia emitida por el Tribunal de Apelaciones. El au-mento no aplica a los empleados querellantes porque no están en el grupo al que van dirigidas las “normas especí-ficas” del Art. 8(8.3) de la Ley Núm. 184. No obstante, con-firmamos la sentencia del Tribunal de Apelaciones en lo concerniente a la jurisdicción de la Comisión para atender las querellas que se presentaron alegando el uso de una práctica ilícita en el ámbito obrero patronal.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Fiol Matta disintió con una opinión escrita.
*32 — o —

(1) La Unión de Servidores Públicos Unidos de Puerto Rico (SPU) está certifi-cada como representante exclusivo de los empleados de esa unidad apropiada, de acuerdo con el Art. 8(8.3)(3) de la Ley Núm. 184-2004 (3 L.P.R.A. sec. 1464b(3)), desde el 4 de mayo de 2005. Esta fue la certificación número 052 de la Comisión de Relaciones del Trabajo del Servicio Público (Comisión). En agosto de 2007, DACO y SPU firmaron el Convenio Colectivo entre ellos. Véase Alegato de la recurrida, pág. 3.

(2) Se trataba de tres querellas (CA-06-111, CA-06-122 y CA-06-150) en las cua-les los empleados Jorge Rosa Hernández, Ornar Rodríguez Rodríguez, Héctor Pérez Serrano, Carmen L. Villar Febo y Lymarie del Valle Pérez, hicieron una reclamación de aumento salarial. Por tratarse de la misma controversia, el 4 de abril de 2007, la Comisión decidió consolidar los casos.

(3) La sec. 1464b(3) de la Ley Núm. 184, supra, dispone lo siguiente:
"... Los empleados públicos no sindicados y gerenciales que hayan ocupado un puesto regular durante un período ininterrumpido de tres (3) años de servicios, sin haber recibido ningún otro aumento de sueldo recibirán un aumento de hasta un cinco por [ciento] (5%) de su sueldo o su equivalente en tipos intermedios. Para esto, el empleado debe haber provisto servicios satisfactorios durante el período de tres (3) años según evidenciado en sus hojas de evaluaciones. La [A]utoridad [N]ominadora enviará una notificación escrita a todo empleado que no satisfaga esta consideración. La notificación incluirá las razones por las cuales no se le concede al empleado el referido aumento, y le advertirá de su derecho de apelar ante la Comisión Apelativa”.

(4) Véase Apéndice de la Petición de certiorari, pág. 123.

(5)íd., pág. 166.

(6) íd., pág. 165.

(7) íd.

(8) íd., esc. 5.

(9) Véase Apéndice de la Petición de certiorari, pág. 60.

(10) íd., pág. 25.

(11) íd., pág. 29. El foro apelativo citó Condado Plaza v. Asoc. Emp. Casinos P.R., 149 D.P.R. 347, 357 (1999), en la cual expresamos que “[l]os derechos y [las] obliga-ciones dimanantes de las leyes estatales que pueden ser renunciados o alterados mediante contrato se encuentran desplazados por los propios convenios colectivos”.

(12) ei p]an {je Reorganización Núm. 2, aprobado el 26 de julio de 2010, fusionó la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Ser-vicio Público (CASARH) y la Comisión de Relaciones del Trabajo del Servicio Público (CRTSP), creando así lo que ahora se conoce como la “Comisión Apelativa del Servi-cio Público” (CASP). La GASP actúa como un organismo cuasijudicial en la Rama Ejecutiva. Se especializa en asuntos obrero-patronales y del principio de mérito, atendiendo casos laborales, de querellas y de administración de recursos humanos, tanto para los empleados que negocian sus condiciones de trabajo al amparo de la Ley Núm. 45-1998 (3 L.P.R.A. see. 1451 et seq.), como para los empleados públicos a quienes cubre la Ley Núm. 184, supra. Igualmente, CASP atiende aquellos casos cobijados por la Ley Núm. 333-2004, según enmendada, conocida como la “Carta de Derechos de los Empleados Miembros de una Organización Laboral”.

(13) 3 L.P.R.A. sec. 1461c.

(14) Conocida ahora como la “Oficina de Capacitación y Asesoramiento en Asun-tos Laborales y de Administración de Recursos Humanos” (OCALARH). Véase Art. 1 de la Ley Núm. 133-2011.

(15) Como veremos adelante, la Ley Núm. 45, supra, otorgó a los empleados de las agencias tradicionales del gobierno central el derecho a sindicalizarse y a nego-ciar colectivamente.

(16) Conforme a lo establecido en su ley habilitadora, ORHELA debe asesorar a las agencias regidas por la Ley Núm. 45, supra, en todo asunto relacionado con los procedimientos de certificación de organizaciones sindicales, en cuanto a negociación y administración de convenios colectivos en áreas relacionadas con los asuntos laborales. Igualmente, esta agencia está llamada a supervisar, ayudar y asesorar a las autoridades nominadoras en la administración del sistema de recursos humanos, comprendiendo las agencias constituidas como administradores individuales y aque-llos empleados y organismos no excluidos por la Ley Núm. 184. 3 L.RR.A. sec. 1461b.

(17) 3 L.RR.A. sec. 1461b. Cabe señalar que, de no estar conforme con la inter-pretación que diera ORHELA de las disposiciones relativas a áreas esenciales o no esenciales al principio de mérito, a la retribución o a las disposiciones administrati-vas adoptadas por un administrador individual, existía la posibilidad de apelar a la entonces Comisión Apelativa de Administración de Recursos Humanos del Servicio Público dentro de un periodo de treinta días. 3 L.P.R.A. ant. see. 1468.

(18) Véase 3 L.P.R.A. ant. sec. 1452t, que facultaba a la Comisión, en su primer inciso, a
"... [i]nterpretar, aplicar y hacer cumplir las disposiciones de este capítulo en todo lo relativo a los procesos de organización, certificación, descertificación de orga-nizaciones sindicales; en los procedimientos relacionados con la conciliación y arbi-traje de negociaciones de convenios colectivos, en los procedimientos relacionados con prácticas ilícitas y en todos aquellos aspectos que este capítulo le delegue alguna actuación particular”.

(19) 3 L.P.R.A. sec. 1451e.

(20) Según la Ley Núm. 45, supra, la Comisión era, entre otras cosas, el ente gubernamental encargado de determinar cuáles puestos de trabajo constituirían la unidad apropiada. Depto. Estado v. U.G.T., 173 D.P.R. 93 (2008). En la realización de esa encomienda se consideran criterios establecidos en la ley, tales como:
(a) Comunidad de intereses entre los empleados.
(b) Evitar el fraccionamiento excesivo de las unidades.
(c) Patrones actuales de organización formal e informal de los empleados.
(d) Protección del pleno disfrute de los derechos reconocidos en la ley.
(e) Viabilidad de las negociaciones.
(f) Similitud funcional en requerimiento o condiciones del trabajo.
(g) Sistema de personal establecido y planes de clasificación y retribución im-plantados en la agencia.
(h) Acuerdo entre las partes. Id., pág. 103.

(21) Véase 3 L.P.R.A. sec. 1451d. Se excluyen de las unidades apropiadas los empleados siguientes:
“1) Empleados con nombramientos de confianza, transitorios, irregulares, por jornal y empleados confidenciales.
“2) Funcionarios sujetos a confirmación legislativa.
“3) Los supervisores de todas las agencias, según este término ha sido definido en esta Ley.
“4) Los empleados de la Comisión.
“5) Los empleados de la Oficina Central.
“6) Los empleados de la Oficina Propia del Gobernador y de unidades adminis-trativas u oficinas adscritas que ejercen funciones confidenciales u ocupan puestos de confianza.
“7) Los empleados de la Oficina de Gerencia y Presupuesto.
“8) Los empleados que presten servicios para el Gobierno de Puerto Rico o para cualquiera de sus agencias o instrumentalidades en oficinas fuera de Puerto Rico.
“9) Los empleados de la Comisión Estatal de Elecciones.
“10) Los miembros de la Policía y la Guardia Nacional de Puerto Rico y los agentes, empleados y funcionarios del Departamento de Justicia.
“11) Los empleados de la Oficina de Etica Gubernamental.
“12) Organismos creados con un propósito específico por un término fijo”. 1998 (Parte 1) Leyes de Puerto Rico 145, 154-155.

(22) 3 L.P.R.A. sec. 1451j. Véase Asociación Maestros v. Comisión, 159 D.RR. 81, 89 (2003).

(23) Reglamento Núm. 7766 de la Comisión de Relaciones del Trabajo del Servi-cio Público de 30 de octubre de 2009.

(24) 3 L.P.R.A. sec. 1451g. Véase Asociación Maestros v. Comisión, supra.

(25) La definición de “empleado sindicado” resulta obvia y sencilla; la Real Academia Española lo define como aquel que pertenece a un sindicato.

(26) La Ley Núm. 96-2001 (3 L.P.R.A. see. 1454) incorporó a la Ley Núm. 45, supra, la opción de no afiliarse y estableció un nuevo cargo por servicio para los que opten por ejercerla. En lo pertinente, el Art. 17(17.2) expresa así:

“Sec. 1454a. Cargo por servicio

“Los miembros de la unidad apropiada que opten por no afiliarse pagarán al representante exclusivo un cargo por servicio hasta un máximo de cincuenta por ciento (50%) de la cuota regular establecida para los afiliados al representante exclusivo. También tendrán que observar las disposiciones del convenio colectivo en cuanto a los procedimientos para ventilar quejas, agravios y arbitraje, siéndole apli-cables, en igual medida, las disposiciones del Convenio Colectivo referentes a sala-rios, beneficios marginales y condiciones de empleo”. 3 L.P.R.A. sec. 1454a.

(27) 3 L.P.R.A. see. 1454.

(28) 3 L.P.R.A. sec. 1454a.

(29) 3 L.P.R.A. sec. 1451a(m).

(30) 3 L.P.R.A. secs. 1451m y 1451w.

(31) 3 L.P.R.A. see. 145 lx.

(32) 3 L.P.R.A. secs. 1451m y 1451w.

(33) Los empleados gerenciales son aquellos que “(1) tiene[n] ideas, intereses y actitudes alineadas con las de la gerencia; (2) formula[n] o determina[n] la política y las normas administrativas y gerenciales del patrono en el curso de su trabajo, y (3) ejercita[n] un alto grado de discreción para realizar su labor sin que tenga que con-formarse a unas normas predeterminadas por el patrono”. J.R.T. v. Corp. del Conserv. Música P.R., 140 D.P.R. 407, 415-416 (1996). Véanse: Depto. Estado v. U.G.T., supra; A. Acevedo Colom, Legislación de relaciones del trabajo comentada, Puerto Rico, 2007, pág. 110.

(34) La Ley Núm. 45, supra, así como la Ley Núm. 184, supra, están enmarcadas en el principio de mérito. Este principio se define como el “[c]ompromiso de gestión pública que asegura transacciones de personal donde todos los empleados de carrera deben ser seleccionados, adiestrados, ascendidos y retenidos en su empleo en consi-deración al mérito y a la capacidad, sin discrimen por razón de raza, color, sexo, nacimiento, edad, origen o condición social, incapacidad física, incapacidad mental, condición de veterano, ni por sus ideas o afiliación política o religiosa”. 3 L.P.R.A. see. 1451a. Véase, también, 3 L.P.R.A. see. 1461.

(35) 3 L.P.R.A. secs. 1464a-1464b.

(36) Véase Informe del Sustitutivo del P. de la C. 3844 de 15 de julio de 2004, pág. 13.

(37) Normas generales sobre retribución conforme a la Ley para la Administra-ción de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Reglamento Núm. 6939 de 3 de febrero de 2005, pág. 8.

(38) Véase 3 L.P.R.A. see. 2175.

(39) D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed. rev., Bogotá, Ed. Forum, 2001, págs. 559-560.

(40) íd., pág. 53.