ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **SERVIDORES PÚBLICOS UNIDOS DE PUERTO RICO**<br><br>Recurrido<br><br>v.<br><br>**DEPARTAMENTO DE TRANSPORTACIÓN Y OBRAS PÚBLICAS**<br><br>Recurrente | TA2025RA00386 | **REVISIÓN** procedente de la Comisión Apelativa del Servicio Público<br><br>Caso Núm:<br>CU-25-001<br>D-25-017<br><br>Sobre:<br>Certificación de Representación Exclusivo |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 27 de febrero de 2026.

El Departamento de Transportación y Obras Públicas (DTOP o parte recurrente) nos solicita que revoquemos la *Clarificación de Unidad Apropiada* emitida el 21 de julio de 2025 por la Comisión Apelativa del Gobierno de Puerto Rico (CASP). Mediante el referido dictamen, el foro administrativo modificó el acuerdo presentado conjuntamente por el DTOP y Servidores Públicos Unidos de Puerto Rico (Unión de Servidores Públicos o parte recurrida), al incluir en la Unidad Apropiada B puestos adicionales a los originalmente pactados por las partes.

Por los fundamentos que expondremos a continuación, se revoca la determinación recurrida.

### I.

Según surge del expediente, el 14 de marzo de 2025, el DTOP y la Unión de Servidores Públicos presentaron conjuntamente una *Petición de Clarificación de Unidad Apropiada*. Mediante dicha petición, solicitaron que la CASP emitiera la correspondiente Certificación de Unidad Apropiada en virtud de las nuevas

características y clasificación de los puestos unionados, a la luz del Plan de Clasificación y Retribución Uniforme del Gobierno de Puerto Rico de 1 de enero de 2023. En su escrito conjunto solicitaron la inclusión de decenas de clases[1], así como la exclusión de diversas clases, entre las cuales se encontraban las siguientes: (1) Agrónomo; (2) Analista de Recursos Humanos Senior; (3) Contador Sénior; (4) Especialista en Salud y Seguridad Senior; (5) Ingeniero en Entrenamiento; (6) Oficial Administrativo de Recursos Humanos; (7) Oficial Administrativo Senior; y (8) Técnico Legal.

El 23 de julio de 2025, la CASP notificó una *Certificación de Representante Exclusivo-Enmendada, Certificación Núm. 017 (E-1)* y *Clarificación de Unidad Apropiada*, en la cual certificó a Servidores Públicos Unidos de Puerto Rico como el representante exclusivo de la Unidad Apropiada B, denominada *Empleados de Oficina del Departamento de Transportación y Obras Públicas*. A su vez, dicha determinación tuvo el efecto de enmendar la petición conjunta de las partes pues la CASP determinó que procedía incluir como parte de la Unidad Apropiada B las siguientes clases: 1) Agrónomo; (2) Analista de Recursos Humanos Senior; (3) Contador Sénior; (4) Especialista en Salud y Seguridad Senior; (5) Ingeniero en Entrenamiento; (6) Oficial Administrativo de Recursos Humanos; (7) Oficial Administrativo Senior; y (8) Técnico Legal.

---

[1] Conforme se despende de la petición, las partes solicitaron la inclusión de las siguientes clases: 1) Administrador de Sistemas de Oficinas I; 2) Administrador de Oficinas II; 3) Administrador de Sistemas de Oficinas III; 4) Agente Comprador; 5) Analista de Gerencia de Proyectos; 6) Analista de Presupuesto; 7) **Analista en Administración de Recursos Humanos**; 8) **Asistente de Ingeniero**; 9) Auxiliar Administrativo; 10) Auxiliar de Contabilidad; 11) Auxiliar de Control de Asistencia; 12) Auxiliar en Sistemas de Oficinas; 13) Auxiliar Fiscal; 14) Contador; 15) Delineante; 16) Educador y Evaluador de Conductores de Vehículos de Motor; 17) Encargado de Archivo y disposición de documentos; 18) Encargado de Propiedad; 19) Funcionario Administrativo; 20) Guardalmacén; 21) Inspector de Servicio Público; 22) **Investigador de Querellas**; 23) Oficial Administrativo; 24) Oficial de Asistencia y Licencia; 25) Oficial de Contratos; 26) Oficial de Nóminas; 27) Oficial de Querellas; 28) Oficial de Radicaciones; 29) Oficial de Servicios al Conductor; 30) Oficial de Transportación; 31) Oficinista I; 32) Oficinista II; 33) Operador de Máquina de diseñar letras; 34) Operador de Máquina duplicadora; 35) Operador de Procesar Datos; 36) Operador de Radio; 37) Operador de Sistema de Información; 38) Programador de Sistema de Información; 39) Recaudador Auxiliar; 40) Recepcionista Telefonista; 41) Receptor Auxiliar; 42) Receptor Oficial; 43) Técnico de Sistemas de Información y; 44) Técnico de Sistemas de Oficina. (Énfasis nuestro).

En desacuerdo, el 12 de agosto de 2025, el DTOP instó una *Solicitud de Reconsideración*. En esta señaló que las clases previamente enumeradas debían ser excluidas de la organización sindical por constituir empleos gerenciales cuyas funciones conllevaban participación significativa y acceso a información confidencial o relacionada a la formulación de política pública o laboral. Arguyó que, cuando las partes estipulan las clases que habrán de excluirse de la unidad apropiada, no existe mandato legal que confiera o delegue a la CASP facultad para proteger "*un derecho potencial a la sindicación*" que no fue solicitado. En la alternativa, el DTOP solicitó la celebración de una vista evidenciaria y argumentativa a los fines de demostrar por qué no procedía la inclusión de las referidas clases en la organización sindical.

Así las cosas, el 26 de agosto de 2025, la CASP emitió una *Resolución* mediante la cual acogió la solicitud de reconsideración instada por el DTOP y, en consecuencia, ordenó a la División de Investigación reanudar la investigación de las clases cuestionadas. Asimismo, ordenó al DTOP proveer, dentro del término de veinte (20) días, las descripciones de puesto de todos los empleados que ocupaban puestos en dichas clases, y al representante exclusivo, Servidores Públicos Unidos de Puerto Rico, presentar su posición respecto al recurso de reconsideración.

Luego, el 9 de septiembre de 2025, el DTOP presentó una *Moción Informativa y en Solicitud de Prórroga*, en la cual informó que las descripciones de puestos se conocían como formularios F-280 y que se encontraba recopilando la información solicitada. No obstante, indicó que necesitaba una extensión del término concedido para cumplir cabalmente con la orden de la CASP debido a que algunos de los formularios se encontraban en la Oficina de Administración y Transformación de los Recursos Humanos del Gobierno de Puerto Rico (OATRH).

De igual forma, el 12 de septiembre de 2025, la Unión de Servidores Públicos presentó una *Moción en Solicitud de Término*. En consonancia, el 15 de septiembre de 2025, la CASP emitió una determinación concediendo una prórroga de treinta (30) días a ambas partes.

Posteriormente, el 15 de octubre de 2025, el DTOP presentó una segunda *Moción en Solicitud de Prórroga*. En esta, informó que había sometido la solicitud de información a la OATRH pero no había recibido contestación. Por tal razón, solicitó que se le concediera un término adicional de veinte (20) días para culminar el trámite y así poder cumplir con la orden de la CASP.

Más adelante, el 5 de noviembre de 2025, el DTOP presentó un escrito intitulado *Urgente Moción Informativa, Solicitud de Prórroga a tenor de la sec. 3.15 de LPAU y Solicitud de Vista Evidenciaria*. En este, informó que la OATRH no había provisto la información solicitada y, por ello, pidió a la CASP que, conforme a la facultad que concede la Sección 3.15 de la LPAU, *infra*, emitiera una orden extendiendo por treinta (30) días el término de noventa (90) días para atender la moción de reconsideración. Además, solicitó que se emitiera una orden dirigida al Director de la OATRH para que proveyera la documentación requerida o certificara su inexistencia. En la alternativa, ante la imposibilidad de proveer dicha documentación, solicitó que se ordenara la celebración de una vista evidenciaria a los fines de probar sus alegaciones.

Evaluada la solicitud del DTOP, el 20 de noviembre de 2025, la CASP emitió una *Resolución* declarando *No Ha Lugar* a la solicitud de prórroga y de vista evidenciaria instada por el DTOP. Razonó el foro administrativo que había concedido tiempo suficiente al DTOP para cumplir con sus requerimientos, conforme a lo solicitado por dicha parte, y sostuvo que no era responsabilidad de la OATRH proveer la documentación correspondiente a las descripciones de

puestos. En consecuencia, concluyó que, una vez el DTOP contara con las descripciones de puestos solicitadas, podría presentar nuevamente una Petición de Clarificación de la Unidad Apropiada.

Inconforme, el 8 de diciembre de 2025, el DTOP recurrió ante este foro revisor mediante *Recurso de Revisión de Resolución Administrativa.* En este alega que el foro administrativo cometió los siguientes errores:

> Erró la CASP al incluir puestos en la unidad apropiad[a] que no fueron estipulados bajo un "*derecho potencial a la sindicación*" no reconocido en la Ley y en contravención con lo establecido por la jurisprudencia.
>
> *En la alternativa,* erró la CASP al concluir que procedía incluir como parte en la Unidad Apropiada los puestos de (1) Agrónomo; (2) Analista de Administración de Recursos Humano[s] Senior; (3) Contador Sénior; (4) Especialista en Salud y Seguridad Senior; (5) Ingeniero en Entrenamiento; (6) Oficial Administrativo de Recursos Humanos; (7) Oficial Administrativo Senior; y (8) Técnico Legal, ya que conforme a la especificación de la clase y a la Sección 4.2 (a) de la Ley 45-1998, 3 LPRA § 1451d, procedía su exclusión.
>
> Erró la CASP al concluir que procedía incluir como parte en la Unidad Apropiada los puestos de (1) Investigador de Querellas; (2) Analista en Administración de Recursos Humanos; (3) el Asistente de Ingeniero, ya que conforme a la especificación de la clase y a la Sección 4.2 (a) de la Ley 45-1998, 3 LPRA § 1451d, procedía su exclusión.
>
> *En la alternativa,* erró la CASP al solo permitir al DTOP probar su caso mediante la presentación del formulario con la descripción de los puestos y negarse a celebrar una vista evidenciaria para probar que no procedía su inclusión dentro de la unidad apropiada.

El 3 de febrero de 2026, la CASP instó su *Oposición a Recurso de Revisión Judicial de Decisión Administrativa.*

Con el beneficio de ambas comparecencias, procedemos a resolver.

## II.

### A.

Sabido es que los tribunales apelativos están llamados a otorgar amplia deferencia a las decisiones de las agencias administrativas. *Katiria´s Café v. Mun. de San Juan,* 2025 TSPR 33,

215 DPR ___ (2025); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Vélez v. ARPE,* 167 DPR 684, 693 (2006); *Otero v. Toyota,* 163 DPR 716, 727 (2005). Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus actuaciones un abuso de discreción. El criterio rector es la razonabilidad de la agencia recurrida.[2]

Así, al momento de evaluar una decisión administrativa, los tribunales tomarán en consideración, no solo la especialización y experiencia de la agencia sobre las controversias que tuviera ante sí, sino que también deben distinguir entre cuestiones relacionadas a la interpretación de las leyes —donde los tribunales son los especialistas— y aquellos asuntos propios para la discreción o pericia administrativa. *García Reyes v. Cruz Auto Corp.*, supra, pág. 892. Véase, además, *Super Asphalt v. AFI y otros*, 206 DPR 803, 820 (2021); *Capó Cruz v. Jta. Planificación*, 204 DPR 581, 591-592 (2020).

Al aplicar el criterio de razonabilidad y deferencia, se ha dispuesto por la jurisprudencia que los foros apelativos no deben intervenir con las determinaciones de hechos que las agencias formulan, si las mismas están sostenidas por evidencia sustancial que obre en el expediente administrativo.[3] Bajo dicho escenario, los foros apelativos deben sostenerlas. Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675. Véase también, *Daco v. Toys "R" Us*, 191 DPR 760, 764 (2014); *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75 (2000). En cuanto a las conclusiones

---

[2] Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 746 (2012); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

[3] Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Otero v. Toyota*, supra, pág. 728.

de derecho, la LPAU dispone que: "serán revisables en todos sus aspectos por el tribunal".

Empero, debemos puntualizar que, aunque nuestro más Alto Foro ha expresado en reiteradas ocasiones que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente, dicha consideración por parte de los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025).

En consonancia con lo anterior, el Tribunal Supremo de Puerto Rico, haciendo eco a las palabras del Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo,* 603 US 369 (2024), determinó en *Vázquez et al. v. DACo,* supra, que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales y enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU.

Asimismo, el Tribunal Supremo de Puerto Rico expresó en *Vázquez et al. v. DACo,* supra, que:

> [A]l enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial.

Ahora bien, debido a que las resoluciones de los organismos administrativos gozan de una presunción de legalidad y corrección, quien las impugne tiene el peso de la prueba, por lo que deberá presentar evidencia suficiente para derrotarla. *Transp. Sonnell v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *García Reyes v. Cruz Auto Corp.*, supra, pág. 893; *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). De lo anterior, surge claramente que la carga probatoria le

corresponde a la parte recurrente. Si incumple, la decisión administrativa deberá ser respetada por el foro apelativo.

**B.**

La Ley Núm. 45 de 25 de febrero 1998, según enmendada, mejor conocida como la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico (Ley Núm. 45-1998), fue aprobada con el propósito de conferir a los empleados públicos que no estén cubiertos por la Ley Núm. 130 del 8 de mayo de 1945, conocida como la Ley de Relaciones del Trabajo de Puerto Rico, 29 LPRA sec. 61 *et seq.*, el derecho a la organización sindical y a la negociación colectiva, siempre que se observen los parámetros establecidos en dicho estatuto. *Depto. Estado v. UGT*, 173 DPR 93, 101 (2008); *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 536-537 (2006).

Ante dicho fin, el Art. 4 de la Ley Núm. 45-1998, *supra*, en su Sección 4.1, les reconoció a los empleados de las agencias del gobierno central el derecho a organizarse y afiliarse a organizaciones sindicales. 3 LPRA sec. 1451b. De esta manera, los empleados de las diferentes unidades apropiadas que deseen sindicalizarse podrán escoger, mediante el voto mayoritario, la organización que habrá de representarles ante la agencia correspondiente. 3 LPRA sec. 1451g. No obstante, dicho reconocimiento está sujeto a las limitaciones expresamente establecidas en el propio estatuto, el cual delimita su ámbito de aplicación mediante exclusiones específicas.

En ese sentido, la Sección 4.2 de la referida ley establece cuáles empleados deben ser excluidos de pertenecer a todas las unidades apropiadas certificadas por la Comisión Apelativa del Servicio Público para fines de negociación colectiva. Entre las exclusiones relevantes se encuentran los empleados con nombramientos de confianza, los empleados confidenciales y los supervisores de todas las agencias. 3 LPRA sec. 1451d. Estas

exclusiones se fundamentan en el principio de que ciertos cargos, por la naturaleza de sus funciones y su vínculo con el patrono o con la política patronal en asuntos laborales, no pueden formar parte de unidades apropiadas sin generar un conflicto inherente de intereses. Véase, *AAA v. Union Abo AAA,* 158 DPR 273 (2002).

En cuanto al término "supervisor", la Ley Núm. 45-1998, *supra,* dispone que será considerado como tal aquel empleado que, ejerciendo su discreción, tenga autoridad para hacer recomendaciones efectivas sobre la imposición de medidas disciplinarias o que tenga la responsabilidad habitual de asignar o dirigir el trabajo, siempre que tales responsabilidades surjan de una ley, de un reglamento o de la descripción de deberes de su puesto. La característica esencial del puesto de supervisor es la posesión y el ejercicio de autoridad real y sustancial sobre otros empleados, particularmente al tener discreción para recomendar acciones disciplinarias y la responsabilidad de asignar y dirigir el trabajo de forma habitual y no incidental. *Depto. Estado v. UGT*, supra, pág. 99.

Por su parte, el estatuto también excluye de su definición de "empleado" a los denominados "empleados confidenciales". Esta categoría comprende a aquellos empleados que participan significativamente en la formulación e implantación de política pública o que realizan labores directas o indirectas en torno a las relaciones obrero-patronales. 3 LPRA sec. 1451a(p). Nuestro más Alto Foro ha resuelto que esta categoría se extiende a todo empleado que actúa en carácter confidencial con personas que formulan o establecen normas, directrices o la política laboral del patrono, o que tengan acceso o conocimiento de ésta. *Depto. Estado v. UGT*, supra, pág. 113.

Así, la Ley Núm. 45-1998, *supra,* delimita claramente su alcance al excluir de su protección a quienes, por la naturaleza de

sus funciones, representan o asisten de manera sustancial al patrono en la dirección, supervisión o manejo estratégico de las relaciones laborales en el servicio público.

**III.**

En su recurso, la parte recurrente aduce que la CASP incidió al limitarle la oportunidad de probar su caso a la mera presentación del formulario con la descripción de los puestos y negarse a celebrar una vista evidenciaria. Alega el DTOP que el ente administrativo rehusó conceder una vista evidenciaria, la cual le hubiese permitido presentar prueba adicional para establecer que los puestos en controversia debían ser excluidos de la unidad apropiada. En ese sentido, sostiene que la agencia actuó de forma caprichosa y abusó de su discreción al circunscribir el trámite probatorio a una sola modalidad, impidiéndole así desarrollar adecuadamente su caso.

Por su parte, la parte recurrida arguye que el DTOP pretende trasladar su responsabilidad de suministrar un documento medular y esencial para sustentar sus alegaciones en contra de la determinación de la CASP. Sostiene que los formularios con la descripción de puestos eran indispensables para la correcta adjudicación de la controversia de autos, pues estos hubiesen permitido al foro administrativo examinar y cotejar las funciones básicas, esenciales, generales y marginales de los puestos, así como el propósito de la función inherente a cada uno de ellos. Así, reitera que, ante el incumplimiento del DTOP con el requerimiento de la CASP de presentar un documento esencial para sustentar su petición de excluir puestos que, como norma general, se incluyen dentro de la unidad apropiada, el foro administrativo no erró. *No le asiste razón.*

De entrada, es meritorio resaltar nuevamente que la aprobación de la Ley Núm. 45, *supra*, obedeció al objetivo de "conferirle[s] a los empleados públicos en las agencias tradicionales

del gobierno central, a quienes no aplica la Ley de Relaciones del Trabajo de Puerto Rico, el derecho a organizarse para negociar sus condiciones de trabajo dentro de los parámetros que se establecen en la Ley". *Pérez v. CRTSP*, 158 DPR 180, 185 (2002). En ese contexto, resulta importante destacar que, en atención a la trascendencia que reviste la decisión sobre cuáles clases compondrán una unidad apropiada para la protección e integridad del derecho de sindicación, debe exigirse la estricta observancia del proceso legalmente establecido para ello.

Así las cosas, tras examinar detenidamente el expediente ante nuestra consideración y los planteamientos de ambas partes, concluimos que la CASP incidió al negarse a celebrar una vista evidenciaria. En el presente caso, subsiste una controversia sustancial en torno a la naturaleza de las funciones desempeñadas por las clases impugnadas y si estas constituyen empleos gerenciales o de confianza excluidos del derecho a la sindicación. Si bien reconocemos que los formularios con la descripción de los puestos constituyen documentos relevantes para la evaluación de la controversia, estimamos que estos no constituyen necesariamente el único medio probatorio disponible para dilucidar si los puestos en controversia debían ser excluidos de la unidad apropiada.

Al limitar el proceso adjudicativo a la presentación de un solo tipo de documento y denegar la celebración de la vista evidenciaria solicitada por la parte recurrente, la CASP restringió indebidamente el derecho del DTOP a presentar prueba pertinente en apoyo de su reclamación. La controversia de autos no puede resolverse adecuadamente únicamente a base del expediente administrativo actual, particularmente ante la alegada ausencia de las descripciones oficiales de los puestos. Por lo que, ante la importancia que reviste la controversia ante nos, estimamos que la actuación de la CASP constituyó un abuso de discreción, pues

impidió el desarrollo pleno del expediente administrativo, necesario para emitir una determinación informada y conforme a derecho.

En consecuencia, colegimos que, conforme a la totalidad de las circunstancias fácticas del recurso ante nuestra consideración, procede revocar la determinación recurrida y devolver el caso a la CASP para la celebración de una vista evidenciaria y argumentativa, en la cual las partes puedan presentar la prueba pertinente y necesaria para la adjudicación de la controversia.

Por motivo de que procede que se revoque la determinación recurrida, se torna innecesaria la discusión de los demás señalamientos de error.

**IV.**

Por los fundamentos antes expuestos, *revocamos* la determinación impugnada y devolvemos el caso al foro administrativo para que celebre una vista administrativa conforme a nuestros pronunciamientos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones